**UNITED STATES of America,**
**Appellee,**

v.

**Robert Frey PARKER, Appellant.**

**No. 75–1831.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1975.

Decided Feb. 6, 1976.

---

Stephen D. Hoyne, St. Louis, Mo., for appellant.

Melvin R. Horne, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Robert Frey Parker, appellant here and defendant below, was convicted in the United States District Court for the Eastern District of Missouri[1] of having unlawfully conspired with Kenneth Ray Hastings, John Wayne Walster and Gary Michael Winfield to deal in a "controlled substance," to-wit amphetamine tablets in violation of 21 U.S.C. § 841(a)(1).[2] Defendant's case was ultimately submitted to the district court sitting without a jury, and the defendant was found guilty and sentenced to imprisonment for thirty months to be followed by a special parole term of three years.

The over-all indictment returned against Parker and his co-defendants contained five counts. Parker was named as a defendant in the first, second and fourth counts.

The first count charged that during a conspiracy period defined as that between February 5 and February 7, 1975 the defendant and his fellows conspired to bring into the St. Louis, Missouri area "a large quantity of amphetamine tablets, a Schedule II controlled substance, contrary to law," and to willfully and knowingly receive, conceal, sell and facilitate the transportation, concealment and sale of the tablets in question. A number of overt acts were alleged; those acts included an alleged arrangement by Parker and Hastings prior to February 7, 1975 to ship 100,000 amphetamine tablets from California to St. Louis, and an alleged shipment of the tablets on February 7, 1975 by Parker via American Airlines Flight No. 390 to St. Louis from California.

The second count charged that on or about February 7, 1975 the defendant and Hastings unlawfully aided and abetted Walster and Winfield in the unlawful possession of the tablets with intent to distribute them. And the fourth count charged that on or about the same date the defendant unlawfully made use of a telephone to bring about the unlawful possession by Walster and Winfield of the tablets with intent to distribute them and thus facilitated the commission of a felony in violation of 21 U.S.C. § 843(b).

There is no question that the tablets were in fact shipped by air from California to St. Louis where they were seized while in possession of Walster and Winfield. The seizure was made by St. Louis police officers who had been alerted to be on the lookout for the shipment. When the seizure was made, Walster and Winfield were arrested.

Questioning of Walster brought Hastings into the case, and he upon being questioned implicated the defendant, Parker. In due course a federal warrant for the arrest of Parker was issued, and on April 1, 1975 he was arrested by members of the San Diego, California Police Department as he was alighting from his pickup truck which he had parked near his apartment in El Cajon, California, a suburb of San Diego.

When Parker was arrested, the officers conducted a body search and discovered in one of Parker's pockets a book containing addresses and telephone numbers, which book was seized. In connection with the arrest the officers observed a small ledger book in plain view on the seat of the pickup truck, and this book was seized also.

Prior to his arraignment in the district court Parker filed a number of motions including a motion for a change of venue and motions to suppress the evidence seized in St. Louis and California. On May 30, 1975 Parker appeared before the district court for plea. At that time Parker was represented by J. William Beard, Esq. of San Diego, California, who had been employed by the defendant to represent him in connection with his arraignment and in connection with the hearing that was to be held on May 30 concerning the motions filed by Parker and other motions filed by other de-

---

1. The Honorable H. Kenneth Wangelin, District Judge.

2. The conspiracy charge was laid under 21 U.S.C. § 846.

fendants in the case. Mr. Beard made it clear that his appearance was a special one, and that he had not been employed, at least as of that time, to represent the defendant at trial of the case on the merits. Parker pleaded not guilty, and the suppression hearing was then held.

At the conclusion of the hearing it was agreed that Parker would waive trial by jury, and that the conspiracy charge against him would be submitted to the district court on the transcript of the motion hearing and on certain written stipulations which were drawn up in due course and were signed by Assistant United States Attorney Horne, who was handling the case for the government, by the defendant personally, and by Mr. Beard. It was fully understood that no further testimony would be taken in Parker's case and that Mr. Beard need appear no further as Parker's attorney.[3]

On September 8, 1975 the district court found the defendant guilty on the conspiracy charge, and filed appropriate findings of fact and conclusions of law. The substantive charges against Parker were not pressed.

This appeal is being prosecuted in forma pauperis, and the defendant is represented by court appointed counsel.

Assuming that the evidence seized in St. Louis and in California was admissible, it appears that there was adequate evidence before the district court to justify the finding of guilt, and defendant does not appear to contend to the contrary. For reversal he argues that the district court erred in refusing to grant his motion for a change of venue and in refusing to suppress the evidence that has been described; and defendant also contends that his waiver of trial by jury and agreement to submit the case on the merits to the district court were invalid.

As to the contention last mentioned, defendant's position is that in 1975 he was a person of limited means although not completely destitute, that he could not afford to pay Mr. Beard for further representation or to hire another attorney, and that he did not know that if he insisted upon a jury trial counsel would be appointed to represent him without charge.

Defendant's motion for a change of venue, filed under Fed.R.Crim.P. 21(b), addressed itself to the discretion of the trial court, 1 Wright, Federal Practice & Procedure, Criminal, § 344, pp. 636 et seq., and we see no abuse of discretion in the action of the district court in denying the motion.

Turning now to the motions to suppress evidence, we take up first defendant's complaint about the seizure of the address book and the ledger.

The address book was taken from the defendant's person in the course of his lawful arrest under a valid warrant, and the book and its contents were clearly admissible. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *United States v. Regan and Griffin*, 522 F.2d 1151 (8th Cir. Dec. 4, 1975, Nos. 75–1230 and 75–1256); *United States v. Peep*, 490 F.2d 903 (8th Cir. 1974).

As to the ledger, it was in plain view on the front seat of the defendant's pickup truck, and we are of the opinion that its seizure was proper as being incident to a lawful arrest. See *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Beck*, 511 F.2d 997 (6th Cir. 1975); *United States v. Gargotto*, 510 F.2d 409 (6th Cir. 1974), cert. denied, 421 U.S. 987, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975); see also *United States v. Gargotto*, 476 F.2d 1009 (6th Cir. 1973), cert. denied, 421 U.S. 987, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975); *United States v. Bennett*, 409 F.2d 888 (2d Cir.), cert. denied, sub nom. *Haywood v. United States* and *Jessup v. United States*, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), and sub nom. *Thomas v. United States*, 402 U.S. 984,

---

**3.** We note at this point that the stipulations that have been mentioned and a formal written waiver of jury trial signed by Parker were filed on June 30, 1975.

91 S.Ct. 1670, 29 L.Ed.2d 149 (1971). *Cf.* *United States v. Regan and Griffin, supra.*

■ However, even if it be assumed that the books seized in California should have been suppressed, it is clear to us from the findings and conclusions of the district court that that court did not attach any particular significance to the contents of the books, and we are satisfied that the error, if any, in admitting the contents was harmless beyond reasonable doubt. *Brown v. United States,* 411 U.S. 223, 230–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The facts surrounding the seizure of the shipment of amphetamine tablets in St. Louis are not without interest. It appears that there functions in California an organization known as "WE TIP," which is a partial acronym for "We Turn In Pushers." That organization solicits from the general public anonymous telephone information with respect to drug violations known or suspected by the informants; when such information is received by "WE TIP," it is passed on to law enforcement agencies. The anonymity of the informants is preserved to the extent that the organization itself does not know their names or anything about them. Indeed, when an informant telephones the organization, the first thing that he is told is not to reveal his name. There is some evidence of record to the effect that "WE TIP" is a reliable organization but naturally nothing is known about the reliability of persons who give information to the organization.

The record reflects that on the afternoon of February 7, 1975 federal officers learned through "WE TIP" that a package addressed to Walster and mailed by Parker would shortly arrive in St. Louis on American Airlines Flight No. 390, and that the package while labelled as containing antique glass actually contained amphetamine tablets. The package was described with particularity.

Two St. Louis police officers were dispatched to the airport where they established a surveillance to see who would pick up the package which had in fact arrived and was in the process of being unloaded along with other items of cargo.

At about 8:25 p. m. two individuals approached the cargo building in an automobile, and an individual later identified as the defendant Winfield entered the building and claimed the package using the name "John Walster." Walster had in fact remained in the automobile.

Having picked up the package, Winfield returned to the car, and at that point the two men were accosted by the officers. As to what happened after that the evidence is in conflict. The officers testified that when they approached the car, the package was sitting in the open trunk of the vehicle, that the package was open, and that they could tell that it contained numerous white pills later identified as amphetamines. Airport employees testified, on the other hand, that the officers seized the package unopened, brought it back into the cargo building, and then opened it and inspected its contents.

In passing upon Parker's motion to suppress the evidence seized at the St. Louis Airport the district court made no effort to resolve that conflict in the testimony and made no finding as to the reasonableness or unreasonableness of the warrantless seizure. Rather, the district court held on the authority of *Brown v. United States, supra,* that Parker had no standing to complain of the seizure of the contraband from Walster and Winfield. We agree.

In *Brown* the Supreme Court held that a person has no standing to object on fourth amendment grounds to a search and seizure where he was not on the premises when and where the search and seizure occurred, where he claimed no proprietary or possessory interest in the premises, and where he was not charged

with an offense that included as an essential element of the offense charged possession of the seized evidence at the time of the search and seizure in question. 411 U.S. at 229, 93 S.Ct. 1565.

■ Here, it is obvious that Parker was not on the scene when the package was seized from Walster and Winfield, and Parker had no proprietary or possessory interest in the automobile that Walster and Winfield were using or in the package in which the contraband tablets were found. And the charge upon which Parker was convicted did not include as an essential element possession by him of the amphetamine tablets at the time of the seizure or at any other time.[4]

There remains for consideration defendant's claim that his waiver of trial by jury and his agreement to submit the conspiracy charge to the district court on the materials that have been mentioned were invalid. We have carefully considered the record before us, including transcripts of what took place when defendant was arraigned before the district court on May 30, 1975 and when he was sentenced ultimately on October 31 of that year. We find defendant's claim to be without merit but it does call for some discussion.

In the spring of 1975 defendant was twenty-six years of age and had a high school education. While he had never been convicted of a felony, he did have a fairly substantial misdemeanor record in California. There are at least suggestions in the record that the defendant was a large scale dealer in amphetamines at the time of his arrest.

After his arrest defendant furnished bail and remained at large. As has been seen, he was arraigned before the district court immediately prior to the commencement of the hearing on his motions and he appeared in person and by his then attorney, Mr. Beard. While Mr. Beard advised the district court that he was appearing specially, and that arrangements for his fee had not been completed, he made no suggestion to the district court that the defendant was indigent or would need appointed counsel. On the contrary, the district court was advised that if the defendant could not afford to pay Beard for further representation, defendant would "employ other local counsel and not request any continuance for the purpose of obtaining counsel." In the circumstances the district court apparently did not deem it necessary to advise the defendant that if he was or became indigent counsel would be appointed to represent him gratis. The arraignment then proceeded, reading of the indictment was waived, and the defendant entered a plea of not guilty. Thereafter the defendant signed a form waiving his right to be present at later stages of the proceedings other than an actual trial of the case; he was told that he would have to be present for trial on the merits.

Arraignment having been completed, the evidentiary hearing of May 30 was held, and at the close of it defendant agreed to a final submission of the case in the manner that has been described. He remained at large on bail, and returned to California.

The defendant was not sentenced immediately after his conviction and remained at liberty; October 31, 1975 was the date set for sentencing. Apparently between September 8 and September 19, the defendant had some trouble with his former wife and allegedly threatened her with a pistol. On September 19 the government filed a motion praying that defendant's bail be revoked. A copy of that motion was mailed to Mr. Beard.

---

4. In addition to *Brown, supra,* the view here taken is supported by the following cases: *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *United States v. Boston,* 510 F.2d 35 (9th Cir. 1974), *cert. denied,* 421 U.S. 990, 95 S.Ct. 1994, 44 L.Ed.2d 480 (1975); *United States v. Foster,* 506 F.2d 444 (5th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975); *United States v. Hearn,* 496 F.2d 236 (6th Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974); *United States v. Hutchinson,* 488 F.2d 484 (8th Cir. 1973), *cert. denied, sub nom. Ennis v. United States,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974); *Holloway v. Wolff,* 482 F.2d 110 (8th Cir. 1973).

On October 1, 1975 the district court entered an order directing that counsel be appointed to represent defendant, and that defendant show cause by October 10 why the government's motion should not be granted. It appears that pursuant to the order of October 1 defendant's present attorney, Mr. Stephen D. Hoyne, of the St. Louis Bar was appointed to represent defendant.

On October 10 the defendant executed in California a long affidavit resisting the government's motion to revoke bail. While the preparation of that affidavit was not attributed to an attorney, it seems obvious to us that the document was prepared either by Mr. Beard or by Mr. Hoyne, and the affidavit indicates that the defendant had been in contact with Mr. Beard to some extent after the suppression hearing of May 30.

Nothing seems to have been done about the government's motion prior to October 31, 1975 when sentence was imposed. After imposition of sentence the defendant filed a notice of appeal and asked to be allowed to remain at large during the pendency of the appeal.

This request was resisted by the government with the resistance taking the form of a motion to deny bail pending appeal. An evidentiary hearing was held on that motion at which hearing both the defendant and Mr. Hoyne were present. On November 3, 1975 the district court filed a Memorandum and Order upholding the government's position and remanding the defendant to the custody of the Marshal to begin service of his sentence.

On this phase of the case we find that defendant's agreement of May 30 to submit the case to the court without a jury was voluntarily and understandingly made at a time when defendant was represented by counsel of his own choice; we further find that defendant's later execution, along with Mr. Beard, of the stipulations that have been mentioned and a formal waiver of trial by jury was voluntary and intelligent.

There is nothing whatever of record to indicate that between September 8, 1975 and October 31, 1975 defendant complained about not having had a jury trial, and no such complaint appears in the affidavit that defendant filed on October 10.

On the date of sentencing defendant's present attorney made no complaint about the manner in which the case had been disposed of although both the defendant and his attorney had every opportunity to do so. And the question was not raised until the defendant filed in the district court on November 10, 1975 his designation of record on appeal and his statement of appellate issues.

We conclude that the claim in question thus belatedly put forward is nothing but a post-sentence afterthought, and that it is without substance. It is evident to us that the defendant's only real chance for an acquittal was to secure the suppression of evidence vital to the government's case. Had his efforts in that direction been successful, there would in all probability have been no trial to either court or jury. With those efforts having turned out to be unsuccessful, the defendant would have had nothing actually to gain from a jury trial, and had he insisted upon such a trial he might have been tried on three felony charges, rather than on one.

Finding no error, we affirm the judgment of the district court.