UNITED STATES of America, Appellee,

v.

Frederick Dale ANDERSON, Appellant.

No. 76–1715.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1976.

Decided April 4, 1977.

John P. Clifford, Minneapolis, Minn., for appellant; Ronald I. Meshbesher and Brian J. Peterson, Minneapolis, Minn., on the brief.

Thorwald H. Anderson, Jr., Asst. U.S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U.S. Atty., Minneapolis, Minn., on the brief.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.*

HEANEY, Circuit Judge.

Frederick Dale Anderson appeals from his conviction on a two-count indictment. The first count charged conspiracy to receive and possess goods moving in interstate commerce, with intent to convert the goods, in violation of 18 U.S.C. §§ 371 and 659. The second charged possession of the same goods in violation of 18 U.S.C. § 659. Anderson argues that the trial court erred in denying his motions to suppress evidence obtained as the result of a search of a codefendant's home, and to dismiss the conspiracy count of the indictment. He also argues that the trial court committed plain error with respect to certain jury instructions. We affirm.

During the night of November 24, 1975, a trailer containing an interstate shipment of two hundred forty-two "Coronado" brand color television sets disappeared from a warehouse parking lot in St. Louis Park, Minnesota. The trailer, without the sets, was later recovered.

* ROBERT VAN PELT, Senior District Judge, District of Nebraska, sitting by designation.

Several weeks later, Roger Mack, an alleged coconspirator who testified for the government, met defendant Joseph Synowczynski[1] at a neighborhood bar. Synowczynski told Mack that he and three other men, defendants Kenneth Soland, Arthur Wood, and Anderson, had stolen the sets and needed help finding a buyer. Mack contacted defendant Richard Proctor, who, after a series of meetings with Synowczynski and Soland, agreed to purchase the stolen sets.

On December 23, 1975, the transfer of the sets was scheduled to take place. Mack, Soland, Wood, Anderson and defendant Richard Christenson met at Anderson's place of employment, where Anderson explained the details of the pending transaction. Proctor, who was bringing a semi-truck to transport the stolen sets, joined the group and they proceeded to Wood's residence where the sets were stored. Shortly after their arrival, preparations were being made for the transfer of the sets when word was received that the police were in the area. The group immediately dispersed.

Within an hour, federal agents arrived at Wood's residence. Three agents walked to the front door, intending to question Wood about the theft. The agents rang the doorbell and knocked, but no one appeared. A light was visible inside the house and the agents heard a dog barking behind it. After waiting briefly, they walked around the house to determine if there was someone with the barking dog. As they walked along the side of the house, they noticed a lighted basement window partially covered by a shade. Glancing through the window, they saw numerous unopened crates marked "Coronado Color Television" piled on the floor of the basement. After observing the

cartons, the agents proceeded to the back porch where they saw the dog alone. They then returned to the front of the house. No attempt to seize the crates was made.

The agents broadcast their discovery over police radio. Mack, who had been picked up by other federal agents, was told that the sets had been found and that the authorities would appreciate his cooperation. He then made several statements, followed by a more detailed statement the next day. These statements, together with the agents' observation of the sets and information obtained from a subsequent interview with Wood, were presented to a magistrate who issued a warrant for the search of Wood's home. During the execution of that warrant, two hundred "Coronado" color television sets from the missing shipment were seized. .

## I.

Anderson contends that the trial court erred in denying his motion for the suppression of all evidence obtained as the result of the agents' initial observation through Wood's basement window. He argues that this view was obtained by government agents while in a place where they had no right to be and, thus, was a warrantless search in violation of the Fourth Amendment. The government answers that Anderson has no standing to claim a violation of Wood's Fourth Amendment rights and, alternatively, that even if Anderson is found to have standing, the agents' observation can be upheld under the plain view doctrine.[2]

 Generally, Fourth Amendment rights are personal rights and "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the

---

1. Kenneth Soland, Arthur Wood, Richard Christenson, Dallas Humphrey, Richard Proctor and Joseph Synowczynski were indicted with Anderson on both counts. Anderson was tried jointly with Christenson, who was convicted on the conspiracy count and acquitted on the possession count. Only Anderson appeals.

2. The government also urges that even if the agents' observation was an illegal search, the affidavit upon which the search warrant was later issued contained sufficient untainted information to independently support the magistrate's finding of probable cause. Because we find the agents' action justified under the factual circumstances presented, we need not reach this question.

search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States,* 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). Where, however, the defendant is charged with possession of the seized evidence at the time of the contested search and seizure, standing to challenge the search and seizure will be conferred. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

▆▆▆ The government concedes that under this test, Anderson has standing because he was charged with possession of the television sets.[3] The government urges, however, that because the self-incrimination dilemma underlying *Jones* has been eliminated by *Simmons v. United States,* 390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), we should take this opportunity to discard the standing rule of *Jones.* See *Brown v. United States,* 411 U.S. 223, 227–230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). The elimination of the danger of self-incrimination does not eliminate the concomitant vice of prosecutorial self-contradiction whereby the government alleges possession as part of the crime charged and yet denies that the defendant has a sufficient possessory interest in the evidence seized to assert a Fourth Amendment claim. See *Brown v. United States, supra* at 229, 93 S.Ct. 1565; *United States v. Kelly,* 529 F.2d 1365, 1370–1371 (8th Cir. 1976); *United States v. Boston,* 510 F.2d 35, 37–38 (9th Cir. 1974), *cert. denied,* 421 U.S. 990, 95 S.Ct. 1994, 44 L.Ed.2d 480 (1975). This issue was expressly reserved in *Brown* and, in the absence of a clear mandate from the Supreme Court, we adhere to our holding that "[p]roper administration of criminal justice should not include such contradictory assertions of governmental power." *United States v. Kelly, supra* at 1370–1371.

▆▆ We turn to the merits of Anderson's Fourth Amendment claim. It is well established that objects falling into the plain view of an officer properly in a position to perceive that view are subject to seizure and are admissible as evidence. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The plain view rule applies only if (1) the initial intrusion which afforded the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent.[4] *Coolidge v. New Hampshire,* 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Clark,* 531 F.2d 928, 932 (8th Cir. 1976).

Anderson does not dispute that the evidence was discovered inadvertently and that its incriminating nature was immediately apparent. Thus, the only question before us is whether the agents' presence in the backyard was an unlawful invasion of Wood's reasonable expectation of privacy so that any evidence observed was the fruit of an illegal search. See *Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Answering this question requires a dual inquiry: first, whether the agents' observation was made in a place to which Wood's expectation of privacy could reasonably be said to extend; and, second, if so, whether the agents' intrusion was justified by "some * * *

---

**3.** Anderson also claims that because Count I of the indictment charges him with conspiracy lasting through the date of the contested "search," and because theft, which necessarily includes possession of the article stolen, is charged as an overt act of the conspiracy, he is likewise entitled to standing on the basis of the first count of the indictment. We disagree. Possession, on the date of the search or at any other time, is not an essential element in the proof of an agreement to receive and possess. See *United States v. Parker,* 530 F.2d 208, 213 (8th Cir. 1976), and cases cited therein. The charging of theft as an overt act does not change that result where, as here, the theft is alleged to have taken place a month before the contested "search." See *Brown v. United States,* 411 U.S. 223, 228–229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

**4.** Because seizure of the evidence in this case was not made until after a warrant was secured, the further admonition of *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), that absent exigent circumstances, "plain view *alone* is never enough to justify the warrantless seizure of evidence," *id.* at 468, 91 S.Ct. at 2039, is not applicable here.

legitimate reason for being present unconnected with a search directed against the accused." *Coolidge v. New Hampshire, supra,* 403 U.S. at 466, 91 S.Ct. at 2038.

■ The private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself. *United States v. Molkenbur,* 430 F.2d 563, 566 (8th Cir.), cert. denied, 400 U.S. 952, 91 S.Ct. 244, 27 L.Ed.2d 258 (1970); *Hobson v. United States,* 226 F.2d 890, 894 (8th Cir. 1955). *See also Cardwell v. Lewis,* 417 U.S. 583, 593, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Thus, when the agents entered Wood's property, they invaded an area with respect to which he had a reasonable expectation of privacy protected by the Fourth Amendment. This initial intrusion was justified, however, by the agents' legitimate objective of finding Wood to question him about the theft. *See, e. g., United States v. Bradshaw,* 490 F.2d 1097, 1100 (4th Cir.), cert. denied, 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974); *United States v. Hersh,* 464 F.2d 228, 229–230 (9th Cir.), cert. denied, 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972). We cannot say that the agents' action in proceeding to the rear after receiving no answer at the front door was so incompatible with the scope of their original purpose that any evidence inadvertently seen by them must be excluded as the fruit of an illegal search.[5] *See United States v. Bradshaw, supra* at 1100.

## II.

Anderson next contends that the trial court erred in denying his motion to dismiss the first count of the indictment which charged him with conspiracy to receive and possess the stolen merchandise. He argues that under *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), he cannot be convicted of conspiracy to receive the stolen goods when the evidence adduced at trial showed that he in fact stole them.[6]

■ The fatal error in Anderson's reasoning is his assumption that a defendant cannot be convicted of receiving alone when the evidence shows that he stole the property.[7] In *Milanovich* and its predecessor, *Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), the Supreme Court held only that a person could not be convicted and separately sentenced for both stealing and receiving the same goods because to do so would be to unlawfully "pyramid penalties." *See United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 1027 n.15, 47 L.Ed.2d 222 (1976). Where a defendant is charged only with receiving stolen goods, there is no danger of the multiplication of punishment.

Anderson next argues that the conspiracy count should have been dismissed because the conspiracy proven was to steal or sell the stolen property, not to receive and possess it as charged in the indictment. This argument rests on two grounds: first, that there was insufficient evidence for conviction of conspiracy to receive and possess; and, second, that even if a conspiracy to receive and possess was proven, the proof of conspiracies in addition to the one charged caused a fatal variance in pleading and proof which required dismissal of the conspiracy charge. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.

---

**5.** Anderson contends that the agents' stated purpose was a mere pretext for their real objective of conducting an illegal search. The trial court found that the agents walked around the house solely *to determine if someone was with the barking dog,* and only inadvertently saw the stolen merchandise through the lighted basement window. This finding is not clearly erroneous. *See Mullins v. United States,* 487 F.2d 581, 589 (8th Cir. 1973).

**6.** Anderson makes a similar argument with regard to the second count of the indictment, which charged him with possession of the stolen merchandise. This argument is frivolous. Conspiracy to receive and possess stolen goods and possession of those goods cannot be deemed "inconsistent offenses" under any theory.

**7.** Anderson's claim is, of course, yet one step more attenuated, that because a defendant cannot be convicted of stealing and receiving the same goods, he cannot be convicted of *conspiracy* to receive when the evidence shows that he stole the property.

1557 (1946); *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

 Viewing the evidence in the light most favorable to the government, *United States v. Green,* 525 F.2d 386, 393 (8th Cir. 1975), the jury could reasonably infer the existence of a preexisting scheme or plan to possess or receive stolen property from Anderson's participation in the theft of the sets. *See United States v. Overshon,* 494 F.2d 894, 895–896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974); *Castle v. United States,* 238 F.2d 131, 135 (8th Cir. 1956). *Cf. United States v. Cordo,* 186 F.2d 144, 146 (2nd Cir.), *cert. denied sub nom., Minkoff v. United States,* 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686 (1951). Even if the evidence tended to establish separate conspiracies in addition to the one charged, we fail to see how Anderson has been prejudiced. The test for reversible error, where two conspiracies have been established instead of one, is not whether such a variance exists but whether it affects the substantial rights of the accused. *Kotteakos v. United States, supra,* 328 U.S. at 756–757, 66 S.Ct. 1239. In *Kotteakos,* the mass trial of defendants involved in separate conspiracies was held to be a deprivation of substantial rights because of the danger of a transference of guilt from one conspiracy to another. *Ibid.* at 774, 66 S.Ct. 1239. Proof of conspiracies in addition to the one charged could hardly inure to Anderson's prejudice when he was a participant in them all. *See United States v. Scott,* 511 F.2d 15, 19–20 (8th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975); *United States v. Wilson,* 497 F.2d 602, 605 (8th Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974); *Hayes v. United States,* 329 F.2d 209, 216–217 (8th Cir.), *cert. denied sub nom., Bennett v. United States,* 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964).

 Anderson also argues that there was insufficient evidence to show the actual or constructive possession required for conviction on the second count of the indictment. This argument is without merit since his directive role in the planning and execution of the delivery of the stolen merchandise to the buyer showed the knowing exercise of dominion and control required for a finding of constructive possession. *See United States v. Dugan,* 477 F.2d 140, 141 (8th Cir. 1973).

### III.

Anderson next contends that the trial court committed plain error in failing to give the following instructions requested by the defendant:

#### I.

The government has charged the defendants with a conspiracy to receive and possess the stolen television sets. If you find that the conspiracy was formed after the defendants had already received and possessed the television sets, you must find them not guilty.

In other words, if the conspiracy was to sell the television sets rather than to receive and possess them, you must find them not guilty of Count I, which merely alleges a conspiracy to receive and possess goods—not a conspiracy to sell goods.

#### II.

Count II of the indictment charges the defendants with possession of the television sets. If you find that the evidence establishes that one or more of the defendants actually stole the property, you must find that particular defendant or defendants not guilty of possession of the property, since they are charged only with possession and not with stealing.

 We find no error. The first instruction simply restates the principle that a defendant must be found guilty of the crime as charged, a point repeatedly emphasized in the trial court's instructions. No error was committed by refusing to give this cumulative instruction. *United States v. Carlson,* 547 F.2d 1346, at 1363 (8th Cir. 1976). The second instruction is an incorrect statement of the law and was properly refused.

 Finally, Anderson contends that part of the trial court's charge to the jury improperly implied that the overt acts alleged in the conspiracy count of the indict-

ment had in fact been committed. A fair reading of the trial court's charge does not support this contention. At the conclusion of the particular instructions cited by Anderson, the trial court instructed the jury that proof beyond a reasonable doubt of an illegal agreement and of any overt act charged would make the crime of conspiracy complete. Similar instructions appear throughout the trial court's charge. We are satisfied that the instructions, read carefully and as a whole, *United States v. Cartano,* 534 F.2d 788, 793 (8th Cir.), *cert. denied,* 429 U.S. 843, 97 S.Ct. 121, 50 L.Ed.2d 113 (1976), adequately advised the jury of the prosecution's burden of proving all of the elements of the offenses charged.

The judgment of the trial court is affirmed.