UNITED STATES,

v.

Charles SEARLE, Defendant.

No. 92–76–CR–FTM–24.
No. 96–167–CIV–FTM–24.

United States District Court,
M.D. Florida.

Aug. 13, 1997.

Jeff Michelland, Asst. U.S. Atty., Ft. Myers, FL, for United States.

Charles Searle, pro se.

*AMENDED MEMORANDUM
DECISION & ORDER*

GAGLIARDI, Senior District Judge.

Defendant moves to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court denies Defendant's motion.

## I. *BACKGROUND*

At approximately 2:30 in the morning of January 25, 1992, the Collier County Sheriff's Department received a complaint about a residence in the Pelican Bay area. The complainant told police that he had heard gunshots and loud music coming from a house that he estimated to be four to five houses up the street. In response, two deputies drove to the area. Although Defendant's residence was only three houses up the street, the deputies noticed that it was the only house on the street that had lights on. Further, the deputies observed several cars parked at the residence that were not of a type normally found in that neighborhood. Knowing that a string of burglaries had recently occurred in Defendant's neighborhood while the residents were at home and fearing that a violent burglary had occurred at Defendant's home, the deputies went to Defendant's door to ascertain the welfare of the residents inside.

After knocking on Defendant's front door for several minutes without response, one of the deputies passed through an area that was enclosed by a fence and went around to the back of the house. The deputy noticed two individuals through the rear sliding glass door who appeared to be sleeping. He then knocked on the sliding door until one of the individuals, dressed in "biker" clothing, awoke and came to the door. The deputy explained that he was investigating a complaint about gun shots and was concerned about the safety of the residents in the house. The deputy then entered the house, and Defendant emerged from his bedroom brandishing a gun. The deputy identified himself as a police officer and ordered several times that Defendant put down his weapon. When Defendant finally complied with this order, the deputy noticed several weapons, including a sawed-off shotgun, in plain view on Defendant's bed.

Defendant was subsequently charged with possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871. Defendant filed a motion to suppress the physical evidence that the deputies obtained from his house on the grounds that it was the fruit of an unconstitutional search, and the Court referred the issue to a magistrate judge. The magistrate held a hearing and filed a report recommending that the Court deny Defendant's motion. Defendant objected to the magistrate's recommendation, and after considering the contested portions de novo, the Court denied Defendant's motion.

On September 4, 1992, Defendant conditionally pled guilty to Count I of the Indictment and reserved his right to appeal the Court's denial of his motion. The Eleventh Circuit affirmed the Court's decision on September 23, 1994. Defendant then petitioned the United States Supreme Court for a writ of certiorari, which was denied on February 21, 1995. Defendant filed his § 2255 motion on May 6, 1996, and he has filed several additional motions since then.

## II. *DISCUSSION OF THE REVISED § 2255 PROCEDURES*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the Act), which amended many sections of the United States Code, including 28 U.S.C. § 2255. Initially, the Court must determine whether the amendments, which were enacted twelve days before Defendant

filed his § 2255 motion, apply to Defendant's case. Although the Eleventh Circuit found that the Act was effective on the date of its enactment, *see Hunter v. United States*, 101 F.3d 1565, 1568 (11th Cir.1996) (*overruled on other grounds by Lindh v. Murphy*, — U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)), it remains for this Court to determine whether the Act applies to all cases filed after its effective date, or only to those cases whose underlying conduct arose after the effective date. In making this determination, the Court is guided by the general proposition that Congress intended that the amendments to § 2255 would apply to all habeas cases that were filed after the Act's effective date. *Lindh*, — U.S. at ——, 117 S.Ct. at 2063. The limitation on this general rule is that the amendments do not apply if they would have a retroactive effect on Defendant's case. The Court's first step is to look to § 105 to see whether Congress has identified those cases to which the new law applies; if so, the Court must follow Congress' lead. *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). If Congress has not identified the cases to which the law applies, the Court's second step is to consider whether application of § 105 would have a retroactive effect on Defendant's case. *Id.* Unless application of § 105 would operate retroactively, it presumptively applies to Defendant's case.

## A. Did Congress State when § 105 Became Effective?

In contrast to other statutes that were amended by the Act, *see, e.g.*, §§ 211 (changes in restitution law and procedures apply to cases where the defendant was convicted on or after the date of the Act's enactment) and 235(h) (provisions concerning closed circuit television of court proceedings only apply to cases filed after January 1, 1995), Congress did not specify the cases to which § 105 applies. Accordingly, the Court must proceed to the second step in *Landgraf* and consider whether application of the § 2255 amendments would have a retroactive effect on Defendant's case.

## B. Would Application of § 105 Have a Retroactive Effect on Defendant's Case?

In considering whether application of § 105 to Defendant's case would have a retroactive effect, it is not enough for Defendant to show that the amended statute is being applied to conduct that occurred prior to the statute's enactment. The term "retroactive effect" refers to a statutory application that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. In the present case, application of § 105 would not increase Defendant's liability for past conduct, nor would it impose new duties on him with respect to completed transactions. Thus, the only question for the Court's consideration is whether application of § 105 would impair any rights that Defendant possessed when he acted. The Court concludes that it would not.

"[T]he term rights' as used in [*Landgraf*] should not be construed broadly so as to sweep within its ambit mere expectation interests under procedural or remedy rules." *Hunter*, 101 F.3d at 1572. In *Hunter*, the Eleventh Circuit noted that defendants have diminished reliance interests in procedural rules because procedural rules regulate secondary, rather than primary, conduct. *Id.* (citing *Landgraf*, 511 U.S. at 275, 114 S.Ct. at 1502). As a result, procedural changes may be applied in suits where the defendants' conduct arose before the changes were enacted without raising concerns of retroactivity because the rules do not change the rights defendants possess, but merely the manner in which those rights may be exercised. *See Landgraf*, 511 U.S. at 275, 114 S.Ct. at 1502. Thus, the fact that a new statutory provision affects a defendant's ability to obtain prospective relief does not make the statute retroactive.

Under *Landgraf*, application of § 105 to the present case would not impair any of Defendant's rights. Section 105 does not regulate the conduct for which Defendant was convicted; rather, it regulates the manner in which he may attack his conviction. It

is thus a procedural rule in which Defendant has a diminished reliance interest. Because § 105 does not have a retroactive effect on Defendant's case, it therefore guides the Court's analysis of his motion.

## C. Calculation of the One–Year Limitations Period

The revisions to § 2255 provide as follows: A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

At the latest, Defendant's conviction became final on February 21, 1995, when the Supreme Court denied his petition for a writ of certiorari; under § 2255's first provision, he would have had until February 21, 1996 to file his habeas corpus motion. Defendant does not argue that the second provision applies, and the Court does not consider it further. Thus, Defendant had one year from the later of the two dates set forth in the third and fourth provisions to bring his § 2255 motion. As discussed below, all of Defendant's claims are either procedurally or substantively barred.

## III. *DISCUSSION*

Defendant offers five separate theories to support his claim that the Court must vacate, set aside, or correct his sentence. The first three theories are wholly without merit; however, because Defendant filed his motion pro se, the Court will nevertheless address each of them. Defendant's fourth and fifth theories raise more complex issues and are analyzed in detail.

### A. Unconstitutional Search

 Defendant first argues that his sentence is the result of an unconstitutional search of his house. However, Defendant cannot properly raise this issue in his § 2255 motion. Where a defendant appeals his conviction, the judgment of the reviewing court is final as to all issues that were raised or which should have been raised. *Teague v. Lane,* 489 U.S. 288, 297, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989). Because Defendant already raised and lost this argument on appeal, he is barred from raising it again in his § 2255 motion. Accordingly, the Court rejects Defendant's claim.

### B. Findings of the Magistrate

Defendant next asserts that the Court employed an erroneous standard of law when it adopted the magistrate's Report and Recommendation and denied Defendant's motion to suppress. Again, Defendant is procedurally barred under *Teague* from raising this claim in his § 2255 motion because it was embodied in his appeal and rejected by the Eleventh Circuit.

### C. En Banc Review

Defendant further argues that the Eleventh Circuit erred when it affirmed this Court's denial of his motion to suppress. The Court lacks jurisdiction to review conclusions reached by the Eleventh Circuit, and this issue cannot be appropriately raised in Defendant's § 2255 motion. However, because Defendant equates the legal process with attorney error, the Court will attempt to resolve Defendant's confusion.

A district court's denial of a motion to suppress is a mixed question of law and fact. As such, the district court's decision does not carry the presumption of correctness that applies to its findings of purely factual matters. Instead, the circuit court reviews de novo mixed questions of law and fact. When the Eleventh Circuit stated that "applications of law to [the] facts are subject to plenary review," it meant that it had the authority to

review Defendant's motion de novo. Upon review, the Eleventh Circuit found no error.

Defendant equates "plenary review" with "en banc review" and asserts that his attorney erred in filing a petition for a writ of certiorari, rather than filing for en banc review before the Eleventh Circuit. A hearing en banc is appropriate only when necessary to maintain the uniformity of the decisions within a circuit or when the question presented is one of exceptional importance. Fed. R.App. Pro. 35(a). Accordingly, Defendant's counsel did not err when he did not file for en banc review.

### D. Possession of a Sawed–Off Shotgun

█ Defendant next argues that, because he was not asked whether he knew that the barrel of his shotgun measured less than 18 inches, the government did not satisfy its burden of proof. In making this argument, Defendant relies upon *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), which held that proof of mens rea is required to support a conviction under § 5861(d). When Defendant pled guilty to violating § 5861(d), mens rea was not an element of his crime. *See, e.g., United States v. Bauer,* 956 F.2d 239 (11th Cir. 1992) (under § 5861(d), proof that defendant knew that he possessed a "firearm" within meaning of the statute was not required to support conviction); *United States v. Crawford,* 906 F.2d 1531 (11th Cir.1990) (essential elements of § 5861(d) were that defendant knowingly possessed destructive device and that device was not registered as required).

Under the amendments to § 2255, Defendant is procedurally barred from raising this claim. The Court finds that, because Defendant waited more than two years after *Staples* was decided to argue that the case compels the Court to vacate his sentence, he is barred under § 2255's fourth provision for failure to exercise due diligence. The Court also finds that, even if *Staples* created a right that has been made retroactively applicable to cases on collateral review, Defendant is barred under § 2255's third provision because he failed to make his motion within a year of the date that *Staples* was decided. Accordingly, the Court denies Defendant's claim on these grounds.

█ Assuming arguendo that Defendant were not procedurally barred by § 2255 from raising this claim, he still is not entitled to relief. To obtain relief based on errors that were committed at the trial court level, Defendant bears the burden of establishing both cause for his failure to raise the claim earlier and actual prejudice resulting from the error of which he complains. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). In this case, the Defendant has failed to demonstrate that he has been actually prejudiced. Defendant does not claim that he would not have pled guilty and insisted on going to trial had he known that the government bore the burden of proving that he knew that the barrel of his shotgun measured only 12 1/2 inches in length, nor does he assert that his plea was not knowingly and voluntarily made. Because Defendant has not satisfied his burden under *Frady,* the decision in *Staples* affords him no opportunity for collateral relief.

### E. Ineffective Assistance of Counsel

█ Defendant also contends that his counsel was ineffective at the suppression hearing and on appeal due to his attorney's failure to successfully argue that the charges against him were the result of an unconstitutional search of his house. Defendant essentially argues, first, that the evidence against him should have been suppressed and, second, that his conviction should therefore be vacated. Again, the Court finds that Defendant is procedurally barred from making this claim. Defendant does not rely upon a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; thus, Defendant's claim is subject to § 2255's fourth provision, which requires Defendant to bring his motion within one year from the date on which the facts supporting his claim could have been discovered through the exercise of due diligence. Because Defendant would not have been convicted if his attorney had successfully argued his motion to suppress, the Court finds that Defendant could have discovered the facts underlying his present claim of ineffective assistance of counsel when this Court denied his motion to suppress on September 2, 1992

and the Eleventh Circuit affirmed on September 23, 1994. Accordingly, Defendant is time-barred under § 2255 for failure to exercise due diligence in bringing this claim.

Even if Defendant were not procedurally barred, the Court would nevertheless deny his claim on the merits. To demonstrate ineffective assistance of counsel, a defendant must show that: (1) the attorney committed errors so serious as to render his performance deficient; and (2) this deficient performance so prejudiced the defendant that the reviewing court lacks confidence in the propriety of the defendant's conviction. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because Defendant fails to make an adequate showing on the prejudice prong, the Court rejects his claim without regard to his arguments on the deficient performance prong. *See id.* at 697, 104 S.Ct. at 2069–70.

■ To satisfy *Strickland's* prejudice prong, Defendant must show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence...." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). Further, in making his claim of prejudice, Defendant must overcome the presumption that this Court and the appellate court judges acted according to the law. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

1. **The Scope of Defendant's Fourth Amendment Rights**

■ The Court agrees with Defendant that the deputies entered Defendant's curtilage when they crossed through his back yard to knock on his back screen door. Courts determine whether an area is considered to be the curtilage of a home, and thus subject to the same Fourth Amendment protections as the home itself, by considering the proximity of the area to the home, whether the area is enclosed, the nature of uses to which the area is put, and whether any steps had been taken by the resident to protect the area from passers-by. *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139–40, 94 L.Ed.2d 326 (1987). In this case, the yard through which the deputies passed was within the curtilage of Defendant's house

because it is immediately adjacent to Defendant's house and is enclosed by a fence which partially obstructs the view of the house to passers-by. Thus, the deputies infringed upon Defendant's Fourth Amendment rights when they crossed through his back yard.

2. **The Deputies' Entry into Defendant's Curtilage**

Because the Fourth Amendment primarily protects a person's privacy interest in his home, warrantless entries by police are presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir.1991). To show that a warrantless entry is constitutional, the police bear the burden of proving both probable cause and exigent circumstances. *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980); *Tobin*, 923 F.2d at 1510. Probable cause exists where the circumstances would lead a reasonably cautious person to believe that a search will disclose evidence of a crime. *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir.1983). Exigent circumstances are found where an urgent need to protect the public outweighs the necessity of obtaining a warrant. *Id.* at 1526.

■ Both probable cause and exigent circumstances existed when the deputies entered the curtilage of Defendant's house. The deputies received notice that shots had been fired in the vicinity of Defendant's house, and Defendant's house was the only one that showed any signs of activity when the deputies arrived in the neighborhood. Further, the deputies initially went to Defendant's front door but received no answer after knocking for several minutes. The deputies thus had probable cause to go to Defendant's back door to ensure the safety of the occupants inside, because a reasonably cautious person would believe that a search of the area would reveal evidence of a crime. Exigent circumstances also existed because the potential need to rescue any wounded occupants outweighed the requirement that the deputies first obtain a warrant from the magistrate. Accordingly, the deputies did not violate Defendant's Fourth Amendment

rights when they crossed through his curtilage to go to his back door.

Other courts have reached this same result. The Seventh Circuit held that exigent circumstances existed when police entered a residence without a warrant after receiving notice that a burglary was in progress. *Reardon v. Wroan,* 811 F.2d 1025, 1029–30 (7th Cir.1987). The Eighth Circuit similarly held that federal agents did not violate a defendant's Fourth Amendment rights when they proceeded to his back door to question him after they received no answer at the front door. *United States v. Anderson,* 552 F.2d 1296 (8th Cir.1977). The Southern District of Florida also held that, "in matters involving possible injury by gun shot, time is of the essence"; hence, police did not violate the defendants' Fourth Amendment rights when they entered the defendants' house and conducted a warrantless search. *United States v. Herndon,* 390 F.Supp. 1017, 1020 (S.D.Fla.1975).

■ Moreover, even if the Court found that the deputies could not demonstrate both probable cause and exigent circumstances, it would still uphold their entry of the curtilage of Defendant's house. Where police have a reasonable suspicion and approach a house to question the occupants thereof, their conduct does not violate the Fourth Amendment. *Tobin,* 923 F.2d at 1511. Given that the deputies had received a "shots fired" complaint and proceeded to Defendant's house because it was the only house on the block that showed any signs of activity, the Court concludes that they had a reasonable suspicion under *Tobin* to go to Defendant's door to ensure the welfare of the occupants within.

Because Defendant cannot demonstrate that the deputies violated his Fourth Amendment rights when they entered the curtilage of his house, he cannot prove, under *Strickland,* that he was prejudiced by his attorney's performance at the suppression hearing or on appeal. Thus, the Court denies Defendant's § 2255 motion with respect to this claim.

### 3. The Deputies' Entry into Defendant's House

■ Defendant next argues that the deputies violated his Fourth Amendment rights when they entered his house. When Defendant appealed this Court's denial of his motion to suppress, the Eleventh Circuit reviewed the record de novo and concluded that Defendant's Fourth Amendment rights had not been violated. The Eleventh Circuit agreed with this Court's finding that one of Defendant's guests had the apparent authority to let the deputies in so that they could ensure the safety of the occupants. Because any deficiencies in the attorney's representation was cured by the Eleventh Circuit's de novo review of the record, Defendant cannot prove, under *Strickland,* that he was prejudiced by his attorney's performance at the suppression hearing or on appeal. Thus, the Court denies Defendant's § 2255 motion with respect to this claim as well.

### 4. The Deputies' Search of Defendant's House

Defendant does not contest the fact that, once the deputies entered Defendant's house, their activities were justified. The deputies observed Defendant's sawed-off shotgun lying in plain view on his bed. Further, although the deputies spent a significant amount of time searching Defendant's house after observing the sawed-off shotgun, they did so with Defendant's consent. Because these activities fall within recognized exceptions to the general requirement that police must have both probable cause and a search warrant before conducting a search, the deputies' actions did not violate Defendant's Fourth Amendment rights. Accordingly, Defendant may not challenge these actions in his § 2255 motion.

### IV. *CERTIFICATE OF APPEALABILITY*

Pursuant to 28 U.S.C. § 2253(c)(1), a defendant may not appeal a district court's denial of his § 2255 motion unless a circuit justice or judge issues a certificate of appealability (COA). According to § 2253(c)(2), a COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. In *Edwards v. United States,* 114 F.3d 1083 (11th Cir.1997), the Eleventh Circuit held that a § 2255 petitioner must first seek a COA in the district court

before seeking one in the circuit court. Defendant has not made the necessary showing under § 2253(c)(2), and the Court declines to issue a COA in this case.

## V. CONCLUSION

Defendant is barred from arguing that his sentence is the result of an unconstitutional search and seizure, that the Court erroneously adopted the magistrate's Report and Recommendation, and that the Eleventh Circuit erred in affirming the Court's denial of Defendant's motion to suppress. In addition, assuming that Defendant is not time-barred from arguing that *Staples* should be applied to his case, he has failed to show that he was prejudiced by any errors that occurred during his plea colloquy. Defendant similarly fails to show that he was prejudiced by any deficiencies in his attorney's performance at the suppression hearing or on appeal. Thus, the Court denies all of the claims argued in or implicated by Defendant's § 2255 motion.

In connection with his § 2255 motion, Defendant has filed a number of related motions, inquiries, and requests. Based upon the Court's analysis of the merits of Defendant's § 2255 motion, these other requests are denied as moot.

So Ordered.