# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1010

_____

United States of America,        *
        *
        Appellee,      *
        *   Appeal from the United States
    v.          *   District Court for the
        *   Southern District of Iowa.
Monica Gracie Gonzalez,      *
        *   [UNPUBLISHED]
        Appellant.     *

_____

Submitted: November 18, 2011
Filed: November 25, 2011

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

PER CURIAM.

Monica Gracie Gonzalez pleaded guilty to one count of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and one count of narcotics possession with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). The district court[1] sentenced Gonzalez to 135 months' imprisonment, followed by five years of supervised release. Pursuant to her plea agreement, Gonzalez now appeals the district court's denial of her motion to suppress

_____

[1]The Honorable John A. Jarvey, United States District Court for the Southern District of Iowa.

evidence obtained as a result of an alleged illegal search of her home's curtilage. We affirm.

Law enforcement agents visited Gonzalez's residence on October 14, 2009. Several weeks earlier, an informant had identified her as a cocaine supplier and/or trafficker. On the day of the visit, agents hoped to question Gonzalez regarding the validity of such reports.

Upon arriving at Gonzalez's trailer-home in rural Iowa, agents noticed three cars sitting in the driveway, one of which appeared inoperable. After failing to receive an answer at the front door, and suspecting someone must nevertheless be home because of the parked cars, agents proceeded to walk around the trailer to the back door. In doing so, agents did not pass through any fences, gates, or other physical obstruction indicating anything more than the usual concern for back-yard privacy. Agents proceeded up the back porch steps, unhindered again by any blocking gates.

As they approached the rear door, agents observed a large, free-standing metal object on the deck, partially covered with a plastic sheet, secured by bungee cords. In plain view, and without needing to touch the object or the sheet, one agent could clearly read "30-ton hydraulic press" on the bottom of the machine. The agent immediately recognized the metal object as a special piece of equipment used to manufacture cocaine bricks. Again, no one answered the back door after forty-five seconds of knocking, and one agent then left to obtain a search warrant, which relied in significant part on the discovery of the 30-ton hydraulic press on Gonzalez's back porch. Other agents remained nearby, but not on the property, in order to secure the premises until the search warrant arrived. Agents then searched Gonzalez's residence.

Based on the evidence agents secured pursuant to the search warrant, and statements Gonzalez made after her arrest, she was indicted and charged with two

counts: (1) conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, and (2) possession with intent to distribute narcotics in violation of 21 U.S.C. § 841(a)(1). Prior to pleading guilty, Gonzalez filed a motion to suppress all evidence, including her statements, obtained as a "fruit" of the search warrant, which she alleged was based on information obtained through a warrantless and illegal search of her property in violation of her Fourth Amendment rights. The district court denied the motion to suppress. Gonzalez timely appealed and now reasserts her claim the government agents exceeded the allowable scope of the knock-and-announce rule by proceeding from the front of the house to the rear of the house without a warrant and thereby intruded into her constitutionally protected curtilage.

We review the district court's factual findings supporting its denial of Gonzalez's motion to suppress for clear error, and its legal conclusions *de novo*. United States v. Muhlenbruch, 634 F.3d 987, 995 (8th Cir. 2011).

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend IV. This protection extends to a home's curtilage. United States v. Dunn, 480 U.S. 294, 300 (1987). "Curtilage" is defined as "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." Oliver v. United States, 466 U.S. 170, 180 (1984) (internal quotation marks and citation omitted). Neither party contests the district court's finding below "the back deck and backyard area is curtilage of the residence and that the defendant had a legitimate expectation of privacy in that area." Order Denying Mot. to Suppress, June 4, 2010, at 9.

This Circuit has found invasions into an area where a person holds a reasonable expectation of privacy to be lawful so long as the intrusion was justified by "some legitimate reason for being present unconnected with a search directed against the accused." United States v. Anderson, 552 F.2d 1296, 1299-1300 (8th Cir. 1977) (internal quotation marks and citation omitted). Furthermore, an entry is considered

justified when officers have a "legitimate law enforcement objective." United States v. Weston, 443 F.3d 661, 667 (8th Cir. 2006). And, we have held that general investigatory procedures, such as when agents visit a residence with the intention of questioning a suspect, qualify as a legitimate law enforcement objective. Anderson, 552 F.2d at 1298, 1300. Finally, where officers acting on such a legitimate law enforcement objective have a reasonable belief someone is home, our Circuit and others have found proceeding to an alternative entrance a reasonable invasion of the occupant's privacy. See United States v. Raines, 243 F.3d 419, 420-21 (8th Cir. 2001) (holding officer reasonably proceeded to the rear of a house to serve civil process after no one answered the front door, there were several cars parked in the driveway, and the officer suspected the residents did not hear him knock, and the officer was following County procedure); Anderson, 552 F.2d at 1298, 1300 (holding agents did not violate occupant's Fourth Amendment rights when no one answered the front door knock-and-announce, agents suspected someone was home because a light was visible in the house, and agents heard a dog barking); see also Hardesty v. Hamburg Tp., 461 F.3d 646, 653-54 (6th Cir. 2006) (stating "[o]fficers' decision to proceed around the house to seek out a back door was within the scope of the knock and talk investigative technique" where "circumstances indicate that someone is home": those circumstances existed when multiple cars were in the driveway and an interior light had been extinguished as officers approached); Alverez v. Montgomery Cnty., 147 F.3d 354, 356 (4th Cir. 1998) ("The Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there[.]"); United States v. James, 40 F.3d 850, 862 (7th Cir. 1994) (rev'd in part on other grounds, 516 U.S. 1022 (1995)) ("[W]here the back door of a residence is readily accessible to the general public, the Fourth Amendment is not implicated when police officers approach that door in a reasonable belief that it is a principal means of access to the dwelling."); United States v. Bradshaw, 490 F.2d 1097, 1100-1101 (4th Cir. 1974) ("[The agent was] clearly entitled to go onto defendant's premises in order to question him concerning the abandoned vehicle near his property. Furthermore, we cannot say that [the agent]

exceeded the scope of his legitimate purpose for being there by walking around to the back door when he was unable to get an answer at the front door.").

Having identified that officers may proceed to the back door if they reasonably believe someone presently in the house simply failed to hear their initial knock, we are left to determine whether the district court's conclusion in this case that "[t]he presence of several cars at the residence made it reasonably likely for a police officer to believe that someone was home" constituted clear error. Order Denying Mot. to Suppress, June 4, 2010, at 13. We think it did not. Gonzalez claims the evidence was insufficient to indicate people were home when the officers arrived. She asserts such a conclusion is unreasonable when the officers only observed two working cars, absent any other sign of an occupant, such as a light or noise. However, in light of the officers' testimony—which included statements indicating their reasons for proceeding to the back door: "because there's two cars there so someone has to be there" and "there was probably a chance that maybe one of those occupants or owners of those vehicles would be at the trailer" (Trans. 44, 50 and 32, respectively)—we find no clear error in the district court's factual conclusion "there was a sufficient indication that someone might be home for a police officer to knock at an alternate entrance." Order Denying Mot. to Suppress, June 4, 2010, at 13.

Accordingly, we affirm the district court's order.

_____

-5-