Jerry Mack **NORED**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–93–00208–CR.

Court of Appeals of Texas, Dallas.

March 14, 1994.

Jeanette L. Drescher, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before LAGARDE, CHAPMAN and MORRIS, JJ.

## OPINION

LAGARDE, Justice.

Jerry Mack Nored appeals his conviction for burglary of a building. After the trial court overruled appellant's motion to suppress, appellant pleaded guilty. Pursuant to a plea bargain, the trial court sentenced appellant to twenty-five years' imprisonment. Appellant brings two points of error contending that: (1) the police violated appellant's Fourth Amendment rights by monitoring a mobile tracking device and by entering appellant's property without a warrant; and (2) the police failed to obtain a statutorily required court order before installing a mobile tracking device. We overrule the points and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Highland Park police officer Greg Brandstatter testified that due to a rash of burglaries in an area of Highland Park, the police set up a "sting" operation to attempt to catch a burglar. The police placed a bicycle equipped with a mobile tracking device (a beeper) in a residential garage leased for that purpose. Theft-detection dye was placed on the handle bars and other parts of the bicycle. When the beeper signaled that the bicycle was being moved, the officers

hurried to the garage; the bicycle was gone. The officers traced the beeper's signal on receivers in their squad cars and followed the signal to an apartment complex in Dallas about one-half mile outside the Highland Park city limits and less than a mile from the garage where the police had placed the bicycle.

The apartment was located within a yard surrounded by a wooden "privacy" fence. As Officer Brandstatter walked next to the fence, he heard a noise. He looked through a knothole in the fence and saw a bicycle matching the description of the bicycle taken from the garage. After officers with hand-held receivers confirmed that the beeper was inside the fence, the officers entered the gate and approached the apartment.

Officer Brandstatter knocked on the door. He testified that the officers intended to investigate whether the bicycle was in fact the one taken from the garage. When a man came to the door, the officers asked him to step outside. Officer Brandstatter asked him whether anyone was still in the house, and the man said, "Yes, the guy who lives here is in there." Officer Brandstatter then "summoned him out." When this man, appellant, came to the door, Officer Brandstatter "gave him over to Officer Barrow." When Officer Barrow saw that appellant had the theft-detection dye on his hands, he arrested him.[1] The police checked the serial number on the bicycle and confirmed that it was the bicycle taken from the garage. Thirteen minutes elapsed from the time the beeper indicated that the bicycle was being moved until the officers arrested appellant.

## MOTION TO SUPPRESS

### Burden of Proof

■ When a defendant seeks to suppress evidence on the basis of the right to be free of unreasonable search and seizure, the burden of proof is initially on the defendant.

*Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim. App.1986). In *Russell,* the court of criminal appeals further explained the burden of proof as follows:

> As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant.
>
> Once a defendant has established 1) that a search or seizure occurred and 2) that no warrant was obtained, the burden of proof shifts to the State. If the State produces evidence of a warrant, the burden of proof is shifted back to the defendant to show the invalidity of the warrant. If the State is unable to produce evidence of a warrant, it must prove the reasonableness of the search or seizure.

*Russell,* 717 S.W.2d at 9–10 (citations and footnote omitted). However, the State is not required to prove the propriety of the search beyond a reasonable doubt. *Lalande v. State,* 676 S.W.2d 115, 117–18 (Tex.Crim.App. 1984).

### Standard of Review

■ At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility and the weight given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge may accept or reject any or all of the witnesses' testimony. *Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078, *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991). We do not engage in our own factual review. We only consider whether the trial court improperly applied the law to the facts. *See Romero,* 800 S.W.2d at 543. Absent a showing of an

---

1. In the briefs and at oral argument, the parties disputed whether the officer arrested appellant before examining his hands to determine whether appellant's hands were stained with the theft-detection dye. After submission, both sides filed supplemental citations to the statement of facts in support of each side's interpretation of the record. The issue is only marginally relevant, however, because appellant did not present a point of error challenging the legality of the arrest on this ground. We have thoroughly reviewed the record. Our interpretation is supported by the statement of facts viewed in the light most favorable to the trial court's ruling.

abuse of discretion, we do not disturb the trial court's findings. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985). We view the evidence in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988). If the evidence supports the trial court's ruling, we do not disturb that ruling. *Johnson*, 803 S.W.2d at 287. We must uphold the trial court's ruling if it can be upheld on any valid theory, regardless of whether the State argued it in the trial court or on appeal. *See Lewis v. State*, 664 S.W.2d 345, 347 (Tex.Crim.App. 1984) (disposing of motion to suppress on grounds of appellant's lack of standing despite fact that State did not argue lack of standing at trial or on appeal).

## FOURTH AMENDMENT RIGHTS

In his first point of error, appellant contends that the trial court erred in overruling his motion to suppress because the police violated his Fourth Amendment rights (1) by monitoring the beeper after appellant brought it within an area in which he had a reasonable expectation of privacy and (2) by entering onto the property without a warrant.[2]

### Monitoring the Beeper

■ Appellant does not contend under this point of error that the beeper was illegally installed or that the police could not monitor the beeper while the bicycle was in a public place. Appellant argues that the monitoring of the beeper violated his Fourth Amendment rights after he brought the bicycle inside the privacy fence surrounding his apartment. To resolve this issue, we must determine whether the monitoring of the beeper infringed "an expectation of privacy that society is prepared to consider reason-

able." *United States v. Karo*, 468 U.S. 705, 712, 104 S.Ct. 3296, 3302, 82 L.Ed.2d 530 (1984) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)).

In support of his argument, appellant relies on a series of federal cases concerning the monitoring of legally obtained chemicals that can be used in the process of manufacturing or refining illegal drugs. *See Karo*, 468 U.S. 705, 104 S.Ct. 3296; *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983); *United States v. Cassity*, 631 F.2d 461 (6th Cir.1980); *United States v. Bailey*, 628 F.2d 938 (6th Cir.1980). In each of these cases, law enforcement officers placed beepers inside containers of chemicals that were sold to the suspects. The officers monitored the beepers as the chemicals were transported and then were taken inside a private area. The courts held that the monitoring of the beepers did not violate the suspects' reasonable expectations of privacy as long as the chemicals were in public areas, such as during transportation on public highways. However, the courts held that the monitoring did violate the suspects' reasonable expectations of privacy when the chemicals were taken out of public areas, such as inside a private residence. From these cases, appellant concludes that the monitoring of the beeper in this case violated appellant's reasonable expectation of privacy after the bicycle left the public area and entered appellant's private area, namely, the yard surrounded by the privacy fence.

The *Karo*, *Knotts*, *Cassity*, and *Bailey* cases are all distinguishable, however, because they involved legally obtained chemicals. It is not unreasonable to assume that property legally obtained will be free of police monitoring.

The courts have not applied the same reasoning to contraband. *See United States v. Moore*, 562 F.2d 106, 111 (1st Cir.1977) ("[T]here is a clear line of demarcation be-

---

2. The point of error reads, "The fruits of the arrest and/or search should be suppressed because the 'monitoring' of an electronic tracking device became illegal when the police failed to secure an arrest and/or search warrant before entering an area in which the defendant had an expectation of privacy." We interpret this point

as challenging (1) the monitoring of the beeper after appellant brought it behind the fence and (2) the police's warrantless entry onto the property. We do not interpret this point as contending that the police's checking the serial number on the bicycle was an illegal search.

tween, on the one hand, contraband and other items, such as stolen goods, whose possession is illegal, and on the other, goods, whatever their suspected use, whose possession is legal."), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). The courts have consistently held that police installation and monitoring of beepers placed inside contraband does not violate the Fourth Amendment. *See, e.g., United States v. Most*, 789 F.2d 1411, 1416 (9th Cir.1986) (installation in heroin); *United States v. Sheikh*, 654 F.2d 1057, 1071 (5th Cir. Unit A Sept. 1981) (installation and monitoring in heroin), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982), *overruled on other grounds by United States v. Zuniga–Salinas*, 952 F.2d 876, 877 (5th Cir.1992) (en banc); *United States v. Botero*, 589 F.2d 430, 432 (9th Cir.1978) (installation and monitoring in cocaine), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *United States v. Dubrofsky*, 581 F.2d 208, 211–12 (9th Cir. 1978) (installation and monitoring in heroin); *United States v. Bishop*, 530 F.2d 1156, 1157 (5th Cir.) (per curiam) (installation and monitoring in money stolen from bank), *cert. denied*, 429 U.S. 848, 97 S.Ct. 133, 50 L.Ed.2d 120 (1976).

Thus, the cases upon which appellant relies are distinguishable. As the chemicals and contraband cases illustrate, society is willing to recognize as reasonable a higher expectation of privacy for legally obtained property than for contraband. Unlike the chemicals cases cited above, where the beepers acted as intrusions on the legitimate privacy expectations of the suspects, the beeper in this case acted as a sophisticated burglar alarm. Besides simply notifying the police of the fact of the theft of the bicycle, the beeper provided a means for the police to trace and recover the stolen property. Appellant does not explain why a thief has a right to assume that property he steals will not have a means of crying out its unfortunate fate to its owner and the police as well as notifying them of its position so that it can be recovered and returned to its lawful owner. Nor does appellant explain why a thief has, or should have, a reasonable expectation that once he takes his booty behind closed doors the police will discontinue monitoring the distress signal emitted by the stolen property. Such an expectation of privacy is not one that society is prepared to recognize as reasonable. *Cf. Lucas v. United States*, 411 A.2d 360 (D.C.1980) (department store's electronic search of items for inventory tag to prevent shoplifting not unreasonable). The invasion of privacy in this case was minimal—the beeper informed the police of only the location of the stolen bicycle and beeper. We hold that the monitoring of the beeper after appellant took the bicycle and beeper behind the privacy fence did not violate appellant's reasonable expectation of privacy. Accordingly, appellant has not shown a violation of his Fourth Amendment rights.

### Entering Appellant's Property

■ Appellant next argues that the officers' warrantless entry onto his property violated his Fourth Amendment rights. Officer Brandstatter testified that appellant's apartment was inside a yard surrounded by an eight-foot high privacy fence. The entrance to the property was through a gate "with a regular gate latch on it." Appellant concedes that his apartment had only one door. The officers walked through the gate, through the patio area, and to appellant's door. The purpose of entering onto the property was to talk to the occupants of the apartment "to determine if in fact this is our bicycle and if in fact these people were the ones that took it, basically investigating." [3]

■ The police have the same right as any other person to enter onto residential property and walk up to the front door. *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim.App.), *cert. denied*, 492 U.S. 927, 109

---

**3.** Contrary to the assertions of the dissent, the record does not show that "one of their [the police's] purposes was to get the serial number from the bicycle." *Nored v. State*, 875 S.W.2d 392, 401 (Tex.App.—Dallas 1994, n.w.h.) (Chapman, J., dissenting) (footnote omitted). Nor does the record show that "the officers entered to investigate, and, obviously, *to obtain the serial number.*" *Id.* at 401 (Chapman, J., dissenting). The only evidence of the police's intent on entering the property was "to see who was in there and determine if they were in fact the ones that took the bicycle."

S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (1991). If the person in possession of the property has not made express orders prohibiting any form of trespass, and if the police follow the usual path to the front door, then the police have not violated the person's Fourth Amendment rights. *Id.* In this case, the record does not show that "No Entry" or "No Trespassing" signs were posted on the fence or gate. The gate was not locked and could be opened by pushing down on the handle. Nor does the record show that the police deviated from the usual path in their approach to appellant's only door. Accordingly, the record does not show that the trial court abused its discretion in determining that the police did not violate appellant's reasonable expectation of privacy by entering appellant's property through the closed gate. Thus, no warrant was necessary for the police to enter onto the property.[4] We overrule appellant's first point of error.

## ARTICLE 18.21, SECTION 14

In his second point of error, appellant contends that the trial court erred in overruling his motion to suppress because the police did not obtain a court order authorizing installation of the mobile tracking device under article 18.21, section 14 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC.ANN. art. 18.21, § 14 (Vernon Supp. 1994). The record, however, does not show that a court order for installation of the device was not obtained. Accordingly, appellant has failed to show that the trial court abused its discretion in overruling the motion to suppress on this ground.[5] We overrule appellant's second point of error.

We affirm the trial court's judgment.

CHAPMAN, Justice, dissenting.

Because I would hold that the police had no authority to make a warrantless (1) entry, (2) search of the fenced area around appel-

lant's apartment, and (3) arrest, I respectfully dissent.

## APPELLANT'S CONTENTION

In his first point of error, appellant contends that the fruits of the search must be suppressed because the police failed to obtain a search or arrest warrant before entering the fenced area. The majority does not interpret appellant's first point of error as contending that the checking of the serial number on the bicycle is a search. *Nored v. State*, No. 05–93–00208–CR, 875 S.W.2d 392, 395 n. 2, 397 n. 4 (Tex.App.—Dallas March 14, 1994, n.w.h.). However, in the argument under this point of error, appellant contends that "the search of the courtyard area within [his] privacy fence without a warrant was also unlawful." He complains that the officers "proceeded to search the bicycle inside the privacy fence to determine if its serial number matched that of the stolen bicycle ...." Appellant contends that because there were no exigent circumstances, the "facts exclude the use of [article 14.04] of the Texas Code of Criminal Procedure as a justification to [sic] a warrantless search." In his prayer for relief, appellant contends that "the fruits of the illegal arrest and search should be suppressed for [the] failure of the Highland Park Police officers to obtain an arrest and/or search warrant prior to entering the curtilage of appellant's property." At the hearing on the motion to suppress, defense counsel complained that "the search or the seizure of the bicycle was conducted without a search warrant." He complained that the officers should not have entered the fenced area. Defense counsel further said, "[I]t's the only bicycle. They know it's there. They can't check the serial numbers until they go inside the gate and look at the bicycle...."

I would hold that the argument under this point of error is sufficient to complain of this search because it "directs the attention of the

---

4. The issue of whether the police violated appellant's Fourth Amendment rights by searching the bicycle for the serial number without first obtaining a search warrant is not before us. We make no ruling on the propriety of that search. *See supra* note 2.

5. We express no opinion of the applicability of the statute to property in which a suspect has no present or future legitimate property interest.

appellate court to the error about which the complaint is made." Tex.R.App.P. 74(d). The argument is sufficient to direct this Court's attention to the error of which he complains. *See* Tex.R.App.P. 74(p); *Sanchez v. State,* 854 S.W.2d 677, 681 n. 1 (Tex.App.—Dallas 1993, pet. refused); *Lazcano v. State,* 836 S.W.2d 654, 664 n. 2 (Tex.App.—El Paso 1992, no pet.). Because of the liberal briefing rules, I would hold that this Court should address appellant's argument under his point of error.

## THE MAJORITY OPINION— WARRANTLESS ENTRY

The majority holds that the police had the right to approach what they contend was appellant's "front door." I disagree.

## WARRANTLESS SEARCH

### A. Applicable Law

### 1. The Warrant Requirement

Whenever government agents enter into the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy. *Bower v. State,* 769 S.W.2d 887, 897 (Tex.Crim.App.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991) (quoting *Kann v. State,* 694 S.W.2d 156, 160 (Tex. App.—Dallas 1985, pet. ref'd)). Such a search is permissible only in rare circumstances. *Mincey v. Arizona,* 437 U.S. 385, 390–91, 98 S.Ct. 2408, 2412–13, 57 L.Ed.2d 290 (1978); *Roeder v. State,* 768 S.W.2d 745, 748 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Accordingly, "warrantless searches are improper absent exigent circumstances, at least when the investigating officers have intruded upon the curtilage for the purpose of conducting a search for criminal activity." *Bower,* 769 S.W.2d at 897 (emphasis added); *See also United States v. Williams,* 581 F.2d 451, 453 (5th Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

### 2. Warrant Requirement & The Reasonable Expectation of Privacy

Regarding the warrant requirement and when there is a reasonable expectation of privacy, the court in *Bower* said:

Since the decision in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the following two-fold inquiry has been used to determine whether a search complies with the Fourth Amendment: *(1) whether an individual, by his conduct, exhibits an actual, subjective expectation of privacy; and (2) whether that expectation of privacy is one that society is prepared to recognize as reasonable.* *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984); *Smith v. Maryland,* 442 U.S. 735, 740–741, 99 S.Ct. 2577, 2580–2581, 61 L.Ed.2d 220 (1979). No single factor, however, determines whether an individual may legitimately claim, under the Fourth Amendment, that a place should be free from government intrusion not authorized by warrant. *Oliver v. United States,* [466 U.S. at 177], 104 S.Ct. at 1741. The expectation of privacy test has, to an increasing extent, discarded fictional property concepts in resolving the issues of privacy and public security. *Texas v. Gonzales,* 388 F.2d 145, 148 (5th Cir.1968). Thus, the validity of a search does not turn on trespass law. *Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). To violate the Fourth Amendment, there must be an actual intrusion into a constitutionally protected area. The distinction between open field and curtilage is of assistance in determining the existence or not of reasonable privacy expectations. *United States v. Williams,* 581 F.2d 451, 453 (5th Cir.1978).

Curtilage is "the land immediately surrounding and associated with the home" and warrants the same Fourth Amendment protections that attach to the home. *Oliver v. United States,* [466 U.S. at 179], 104 S.Ct. at 1742; *accord, Gonzalez v. State,* 588 S.W.2d 355, 360 (Tex.Crim.App. 1979).

*Bower,* 769 S.W.2d at 896 (emphasis added) (quoting *Kann,* 694 S.W.2d at 159–60). In *Katz,* the United States Supreme Court said what a resident "seeks to preserve as private even in an area accessible to the public" may

be constitutionally protected. *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Thus, when the police come on to property for a legitimate purpose and restrict their movements to places visitors could be expected to go, observations made from such vantage points are not covered by the Fourth Amendment. *See id.*

### (a) Front Yards, Other Public Areas

A defendant has no reasonable expectation of privacy in the front porch of his home where, presumably, delivery men and others are free to observe evidence or contraband there. *See Bower,* 769 S.W.2d at 897. In *Bower,* the Texas Court of Criminal Appeals said:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably ... to walk up the steps and knock on the front door of any man's "castle" *with the honest intent of asking questions of the occupant thereof*—whether the questioner be a pollster, a salesman, or an officer of the law.

*Id.* (emphasis added) (quoting *Davis v. United States,* 327 F.2d 301, 303 (9th Cir.1964)). In *Bower,* the court further said:

> A *sidewalk, pathway, common entrance,* or similar passageway offers an *implied permission* to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there. The officer who walks upon such property so used by the public does not wear a blindfold; the property owner must reasonably expect him to observe all that is visible. In substance the owner has invited the public and the officer to look and to see. *But, by the same reasoning, the officer who intrudes upon property not so open to the public enjoys no such prerogatives.*

*Bower,* 769 S.W.2d at 897 (emphasis added) (quoting *Lorenzana v. Superior Court of Los Angeles County,* 9 Cal.3d 626, 108 Cal.Rptr. 585, 587, 511 P.2d 33, 35 (1973)).

### (b) Backyards, Other Private Areas

The Texas Court of Criminal Appeals has stated that a warrantless search of an individual's backyard may withstand constitutional scrutiny only when the State shows that an exceptional situation exists at the time of the search. *Gonzalez,* 588 S.W.2d at 360. Even if an officer has probable cause to conduct a warrantless search, an exceptional situation is still necessary in order to uphold the validity of that search. *Id.; see also Kann,* 694 S.W.2d at 160.

### APPLICATION OF THE LAW TO THE FACTS

The essence of the reason that the majority and I part ways is because they excuse the lack of a warrant for the entry and search in this case. I do not agree that the police had a right to enter into an area hidden from public view by an eight-foot wooden privacy fence.

### 1. No Warrant

It is undisputed that the police did not have a warrant in this case. The evidence at the suppression hearing showed they opened the latch and entered into the fenced patio area to investigate the offense.

### 2. Reasonable Expectation of Privacy

I would hold that appellant met his burden of proof to show he had a reasonable expectation of privacy within his fenced patio. *See Bower,* 769 S.W.2d at 897 (discussing fenced areas); *Kann,* 694 S.W.2d at 161. The record did not show that the fenced area was open to the public or used by the public as a common means of ingress and egress. Other Texas cases have indicated that a fenced-off area immediately surrounding a residence is an area in which there is a reasonable expectation of privacy. *See Bower,* 769 S.W.2d at 897 (discussing reasonable expectation of privacy in area "purposefully" fenced off); *Kann,* 694 S.W.2d at 159. This is because people are more likely to keep things of a personal nature in places that are secluded and fenced off from the public view.

I would hold that appellant was entitled to expect privacy in the fenced area even if he himself did not erect the fence. He was entitled to privacy even if the fence had holes in it through which the police could see. *See Kann,* 694 S.W.2d at 158–59. When the police saw the bicycle through the holes in the fence, they were then permitted to take that evidence, along with the evidence that their tracking-device receivers indicated that the bicycle was the stolen bicycle, and obtain a search warrant. They were not authorized to enter the fenced area to check the serial number on the bicycle. *See id.*

I would hold that the fact that the fence gate was merely latched and not locked or posted "no trespassing" does not mean there is "implied permission" to enter. *See Bower,* 769 S.W.2d at 897 (a sidewalk, pathway, common entrance, or similar passageway offers an implied permission to the public to enter). The fact that there was no other means of access did not give the police implied permission to enter a privacy-fenced area. I would hold that it is not unreasonable to expect that strangers will not enter a fenced backyard or patio.[1] I would hold that an eight-foot privacy fence is more of an implied notice to "keep out." The police approached a fenced patio, not a front porch. The door they knocked on was not what most would consider to be a "front door," but was a sliding-glass door. I would hold that appellant met his burden to show that he sought to preserve the area as private.

Further, the police went into the fenced area to knock on the glass door "*and investigate,*" and they did indeed check the bicycle for a serial number before they arrested appellant. In the process of investigating, they looked over the bicycle to see if it was theirs. Because one of their purposes[2] was to get the serial number from the bicycle,

and they had no right to be where they were, I would hold that the trial court erred in failing to grant the motion to suppress. *See Bower,* 769 S.W.2d at 897. When they checked the bicycle, this was a "deviation from [their] purpose" of knocking on the front door. *Id.* (citing *Kann,* 694 S.W.2d at 161 (Howell J., concurring)).

If there is no front door to a dwelling, the police are not always justified in approaching by whatever means available. In some instances, there may not be a front door. A person may design their home so that it is purposefully not open to salesmen, uninvited visitors, and the police, who are in the same position as other citizens when they act with no warrant and no warrant exception applies. For instance, in cases involving a high-rise condominium complex, accessible only by residents carrying entry cards, I would not hold that the police are entitled to "find" a front door.

This is an unusual case because most residences have a front door that is clearly accessible to the public. There are no Texas cases involving warrantless searches of residences that have no front door. However, other courts have held that a resident has a reasonable expectation of privacy and that the police may not enter where there is no front door or common area. *See Garrison v. State,* 28 Md.App. 257, 345 A.2d 86, 89 (1975) (where entrance to building kept locked, visitors must call up to be let in, and police entered at 2:45 a.m. to search basement common to 3 or 4 tenants, search illegal because no evidence from which police could conclude area open to the public, especially at 2:45 a.m.).

There was only one door to appellant's apartment. When the police arrived at 6:30 a.m., they never saw appellant, and there was

---

1. Interestingly, when asked whether his own backyard was open to the public, one officer testified, "I wouldn't want them going through there, no, but they could go through there."

2. If a person does something, it is a reasonable deduction from the evidence that they intended to do it. *See Johnson v. State,* 541 S.W.2d 185, 187 (Tex.Crim.App.1976) (criminal intent); *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 688 (Tex.App.—Dallas 1993, no writ) (intent). View-

ing the evidence in the light most favorable to the judgment, it would be difficult to say the police looked at the serial number by mistake, since the officer said they "checked" it. *See generally, Nored,* 875 S.W.2d at 395 n. 2. The point is that the police may *cross,* but are not supposed to *search* in private areas without a warrant. A more plausible position for the majority is their contention that the officer had a right to be in the area because it was, it apparently contends, open to the public.

nothing in the record to show that appellant knew he was being followed and might try to escape or destroy evidence. Appellant was not going anywhere. The bicycle was not going anywhere. I would hold that the police were required to obtain a warrant to enter the fenced area. No exception to the search warrant requirement applied. *See Juarez v. State,* 758 S.W.2d 772, 776 (Tex. Crim.App.1988) (consent); *Carrasco v. State,* 712 S.W.2d 120, 122 (Tex.Crim.App.1986) (search incident to arrest); *Bolden v. State,* 634 S.W.2d 710, 713–14 (Tex.Crim.App.1982) (emergency); *Gonzalez v. State,* 588 S.W.2d 355, 360 (Tex.Crim.App. [Panel Op.] 1979) (hot pursuit).[3]

In other cases where the officers saw stolen items or evidence while looking through an uncurtained window, the officers then went to get a search warrant. They did not enter the home or private area containing the evidence after seeing the evidence. *See Bower,* 769 S.W.2d at 897 (and cases cited therein). The mere fact that the officers saw the bicycle and knew that their receivers were signaling that it was the stolen bicycle did not justify their entry into appellant's fenced patio area.

### 3. The Search

The essence of a search under Texas law is an intrusion into an area covered by a reasonable expectation of privacy. The term "search" is defined as a quest for, or a seeking out of that which offends the law. *Long v. State,* 532 S.W.2d 591, 594 (Tex.Crim.App. 1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 179 (1976). I would hold that the police did conduct a search while on the patio. They looked at the serial number on the bicycle before they arrested appellant. This is why *Bower,* cited by the majority, is distinguishable. In *Bower,* there was no search because the officers were where they had a right to be when they gathered evidence. *Bower,* 769 S.W.2d at 897. They then obtained a warrant based on what they saw. In this case, when the officers obtained evidence in the form of the serial number off

of the bicycle, they were not in a place where they were entitled to be.

Further, in *Bower,* the officers entered the curtilage in order to *ask questions.* In the case at bar, the officers entered to investigate, and, obviously, *to obtain the serial number.* This is a search. The purpose in entering was not the same as that of the officers in *Bower. See Bower,* 769 S.W.2d at 897 ("warrantless searches are improper absent exigent circumstances, at least when the investigating officers have intruded upon the curtilage *for the purpose of conducting a search for criminal activity"*).

In *United States v. Anderson,* 552 F.2d 1296 (8th Cir.1977), federal agents came to the defendant's residence to question him about a theft of televisions. The agents received no reply to their knock on the front door. They saw a light on in back of the house and heard dogs barking. They proceeded to the back of the house because they thought they could find the defendant there and speak to him. Through a window on the side of the house, they saw evidence of the theft. They then went to get a search warrant based on this evidence. The court held the evidence was legally obtained because, when he saw the evidence, the agent's legal objective was to find the defendant and talk to him. *Id.* at 1300. They were not going to the back of the building to search. *Id.*

Unlike *Anderson,* in this case, the agents were going in to knock on the glass door and, as indicated by the fact that they did check the serial number, also, apparently to obtain the serial number. They did look over the bicycle in order to obtain the serial number before they arrested appellant. To conclude that this amounted to anything less than a search is untenable.

This was not a lawful search incident to arrest because the police did not have probable cause to arrest appellant. They also did not establish that an exception applied excusing them from the requirement that they obtain a warrant for this search and for appellant's arrest. There was no evidence

---

**3.** Appellant was not fleeing when he was arrested, and there was nothing in the record to show

he knew he was being pursued.

that an offense occurred in their presence so that they knew appellant committed it, or even that they knew where the suspect had gone.[4] *See* TEX.CODE CRIM.PROC.ANN. art. 14.01(a) (Vernon 1977); *Adkins v. State,* 764 S.W.2d 782, 786 (Tex.Crim.App.1988); *Simpson v. State,* 709 S.W.2d 797, 802–04 (Tex.App.—Fort Worth 1986, pet. ref'd) (officers investigating report of marijuana scent who were allowed into apartment where several people lived had no probable cause to arrest without a warrant defendant asleep in bedroom where nothing connected defendant to marijuana). There was nothing to tie any particular suspect with a criminal act. *See Adkins,* 764 S.W.2d at 785. No officer testified that he thought appellant was about to escape. TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977). Appellant was not in a suspicious place. *See Holland v. State,* 788 S.W.2d 112, 114 (Tex.App.—Dallas 1990, pet. ref'd) (defendant arrested in home without warrant after children shouted that he had hit them with hammer). The officers did not have a specific person who could be arrested pursuant to article 18.16.[5] *See* TEX.CODE CRIM.PROC.ANN. art. 18.16 (Vernon 1977); *Mitchell v. State,* 756 S.W.2d 71, 74 (Tex. App.—Texarkana 1988, no pet.) (stolen car in front of house, but officers did not know which person inside had stolen car). At the point when the police saw the bicycle, they had no probable cause to arrest anyone. I would hold that, under the facts of this case, because the police could not enter the private area without a warrant, the officers were also required to obtain a warrant for appellant's arrest.

The police also cannot justify under the plain-view doctrine the fact that they could view the serial numbers on the bicycle while they were on the patio, if that were the case. The plain-view doctrine permits an officer to seize evidence without a warrant if the officer is in a place where *he or she has a right to be*

and sees evidence that is obviously connected to a crime. *See Bower,* 769 S.W.2d at 897.

For these reasons, I respectfully dissent.

---

4. The police never saw appellant and did not know where he went. They only saw the parked bicycle.

5. The bicycle could not be seized pursuant to article 18.16 because it was in an area in which

appellant had a reasonable expectation of privacy. Article 18.16 does not permit the warrantless entry into any home or other private area just because stolen items are located there.