NO. 07-05-0144-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 20, 2006

_____

ELAX GREEN BRADLEY, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 248th DISTRICT COURT OF HARRIS COUNTY;

NO. 992,798; HON. JOAN CAMPBELL, PRESIDING

_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

MEMORANDUM OPINION

In this appeal, and in one issue, appellant Elax Green Bradley contends his conviction for the felony offense of possession of a controlled substance of more than one but less than four grams, with intent to deliver, must be reversed. Subsequent to his conviction by the jury of the charged offense, appellant entered into an agreed proceeding in which he stipulated as to prior convictions, pled true to enhancement counts, and was

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

assessed a punishment of 25 years confinement in the Institutional Division of the Texas Department of Criminal Justice. His basis for seeking reversal is that the trial court erred in refusing to suppress evidence obtained as the result of an invalid search and seizure. Disagreeing that reversal is required, we affirm the judgment of the trial court.

Factual Background

The nature of appellant's challenge, although in the main a legal one, requires us to briefly summarize the relevant evidence. The State presented the testimony of three Harris County sheriff's deputies, Mario Quintanilla, Wallace Earl Jones, Jr., and Edward Lopez. Deputy Quintanilla averred that he had been a sheriff's deputy in Harris County since 1991. He said the department had instituted a "knock and talk" procedure. Under that procedure, when the department received a tip that drug activity was taking place at a residence, the officers would go to the address, knock on the door, and talk to the residents to attempt to ascertain the validity of the tip. He estimated that they received tips as often as four or five times a day.

On June 30, 2004, the day in question, the officers went out to a residence located at 6317 West Montgomery in Houston to check out a tip they had received about drug activity at that location. He, Jones and Lopez proceeded to the residence in order to carry out a "knock and talk" procedure there. As they approached, he said lights were on in the residence and he could see into the master bedroom as the windows had only sheer curtains. He saw a male, later identified as appellant, standing by a female on the bed. The man was holding a clear plastic baggy in his hands that contained a rock-like substance which he believed was cocaine. There was a screen door at the entrance to the house with the main door being open.

2

Deputy Jones knocked on the door and a black male later identified as Delvin Green came to the door, saw the officers, attempted to shut the door on Jones and ran back toward the restroom of the house. They also saw appellant running toward the restroom. The officers then entered the house and, as they did so, saw appellant with his hand in the toilet bowl. The officers detained appellant and Green. After they had done so, Deputy Jones spoke to a lady identified as Dewanna Taylor who said she was the owner or lessee of the house and who, he said, voluntarily signed a consent to search the residence. However, Taylor testified that the reason she signed the consent was because the police had threatened to take her to jail. After the consent form was signed, Deputy Lopez went into the restroom and recovered a cell phone and two pieces of crack cocaine rock from inside the toilet and a plastic baggy from outside the toilet.

In overruling the suppression motion, the trial court found that the testimony of Quintanilla was credible, that he did see through the window, and that at that time there were sufficient exigent circumstances to justify entering the house. The court also found that the consent to the search was voluntary. Other portions of the testimony may be referred to if it becomes necessary to a proper discussion of appellant's challenge.

Discussion

The gist of appellant's complaint is that the drug evidence should have been suppressed because it was obtained in a warrantless search that violated the Fourth Amendment to the federal constitution, article 1, §9 of the Texas Constitution, and articles 14.05 and 38.23 of the Texas Code of Criminal Procedure. He argues that the investigating officers were not entitled to enter upon the curtilage of the residence in which the contraband was found and, because of this, even if the officers' observations would

3

otherwise satisfy the exigent circumstances requirement for a warrantless search, they were not justified in entering the house and making the arrest.

The standard of review in regard to a trial court's rulings on motions to suppress is a bifurcated one. Appellate courts afford almost total deference to trial court's determinations of historical facts and to decisions involving mixed questions of law and fact if the resolution of those questions depends upon an evaluation of credibility and demeanor. In such circumstances, appellate courts review for an abuse of discretion. *See Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the standard of review is for an abuse of discretion, reviewing courts must uphold the trial court's decision on any proper grounds, regardless of the basis expressed by the trial court for the ruling. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

In order for a warrantless search to be justified, the State must show the existence of probable cause at the time the search was made and the existence of exigent circumstances that made the procuring of a warrant impracticable. Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe the instrumentality of a crime or evidence of a crime will be found. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991).

It is well established that an individual has an expectation of privacy in his home and that expectation extends to the curtilage surrounding the home. *Oliver v. United States*, 466 U.S. 170, 180 , 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225 (1984). Curtilage is defined as the area around the home to which the activity of home life extends. *Id.* 466 U.S. at 182

4

n.12, 104 S.Ct. at 1743 n.12, 80 L.Ed.2d at 226 n.12. Even so, the restriction against intruding upon one's curtilage has its limits. For instance, it does not prevent a police officer from approaching and knocking on the front door of a home. *Cornealius v. State*, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995). That is so because the police have the same right as any other person to enter onto residential property and walk up to the front door. *Bower v. State,* 769 S.W.2d 887, 897 (Tex. Crim. App. 1989), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991); *Nored v. State*, 875 S.W.2d 392, 396 (Tex. App.–Dallas 1994, pet. ref'd). Because entry is impliedly authorized, there exists no reasonable expectation with regard to things observed by those on the pathway to the house. *Bower v. State*, 769 S.W.2d at 897. It is true that the authorization to enter may not exist if the occupant has manifested his intent to restrict entry to the area. *Id.* However, there is nothing in this record that shows such a manifest intent.

Under this record, Deputy Quintanilla was lawfully on the curtilage of the residence when he had an unobstructed view of appellant holding a baggy containing illegal crack cocaine. *See Washington v. State*, 152 S.W.3d 209, 215 (Tex. App.--Amarillo 2004, no pet.) (holding no unlawful search resulted from officers going through an opening in a backyard fence and observing, *inter alia*, a partially smoked marijuana cigarette lying on a window sill).

Even so, an unconsented police entry into a residential unit constititues a search under *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *McNairy v. State,* 835 S.W.2d at 106. A person normally exhibits an actual, subjective expectation of privacy in their residence, and society is prepared to recognize this expectation as

5

objectively reasonable.  *Id.*  That being so, the officers' entry into the residence constituted a search. Under this record, the officers acquired probable cause for a search of the residence when they had received a tip concerning drug activity at the residence.  Deputy Quintanilla was lawfully on the front porch when he was conducting a knock and talk procedure.  The record supports a conclusion that Quintanilla and Lopez looked through an unobstructed window and saw appellant holding a plastic baggy containing an off-white, rock-like substance in his hand that appeared to him to be crack cocaine.

Having concluded that probable cause for a search existed, it next becomes necessary to determine whether the record is sufficient to show exigent circumstances existed that made the obtaining of a search warrant impracticable.  *See McNairy,* 835 S.W.2d at 107.  In that connection, the prevention of destruction of evidence may be an exigent circumstance sufficient to justify a warrantless entry into a residence.  *Id.*  To determine whether sufficient exigent circumstances existed, we review: 1) the degree of urgency and the amount of time necessary to obtain a warrant; 2) the reasonableness of the belief that contraband was subject to destruction or removal; 3) the possibility of danger to the police officers securing the site pending the application for a warrant; 4) the suspect's awareness of police presence or surveillance; and 5) the ready destructibility of the contraband.  *Id.*

Our review of the record in the light of the above factors shows that the deputies could reasonably have concluded evidence would be destroyed or removed before they could obtain a search warrant.  The record shows testimony that contemporaneously with Deputy Jones' knock on the door of the residence, Deputy Quintanilla observed appellant running toward a bathroom with the baggy containing what appeared to be crack cocaine

6

in his hands and that the deputy heard flushing noises. There was also testimony that Delvin Green, who had responded to the knock on the door, slammed the open inner door shut when he saw the uniformed deputies and fled back into the residence. The deputies averred they heard flushing noises as they entered the residence and they saw appellant with his hand in the toilet attempting to dispose of the cocaine.

The record also shows a sufficient degree of urgency on the officers' part inasmuch as it contains testimony that Quintanilla saw appellant running toward the bathroom holding a baggy containing what appeared to be cocaine at the time that Deputy Jones was knocking on the door with Delvin Green slamming the inner door and running into the house. This testimony would support a conclusion that appellant was aware of the presence of the officers and was about to destroy evidence. Although there was no testimony concerning the time necessary to obtain a warrant, it was quite sufficient to support a conclusion about the impracticability of obtaining a warrant prior to the entry. Suffice it to say that the testimony was amply sufficient to support the trial court's finding of exigent circumstances sufficient to support the deputies' entry into the house.

Additionally, with regard to Dewanna Taylor's consent to search of the residence, although she testified that the consent was given under threat to take her to jail, Deputy Jones testified that he did not threaten Taylor and the consent was given freely. This conflict in testimony was resolved by the trial court, as the finder of fact, in favor of the State. The record is sufficient to support that conclusion.

In sum, the record does not show an abuse of discretion on the part of the trial judge in denying the motion to suppress. Accordingly, appellant's issue is overruled and the judgment of the trial court is affirmed.

7

John T. Boyd
Senior Justice

Do not publish.