COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





CRISTINA MUNOZ,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-09-00160-CR

Appeal from
 384th District Court

of El Paso County, Texas

(TC # 20070D00426)



 

 

 




O P I N I O N

            Cristina Munoz appeals her conviction of possessing more than 50 pounds but less than 2,000
pounds of marihuana. Appellant waived her right to a jury trial and entered a negotiated plea of
guilty. The trial court, in accordance with the plea agreement, assessed Appellant’s punishment at
imprisonment for a term of two years. For the reasons that follow, we affirm.
FACTUAL SUMMARY
            Appellant filed a motion to suppress complaining that marihuana and other evidence was
unlawfully seized during a warrantless search of her property. Detective Gerald Humphry testified
at the suppression hearing that he is employed by the El Paso Police Department and is assigned to
the narcotics division. On the afternoon of January 22, 2007, Humphry conducted surveillance on
a house in El Paso County and videotaped the activity occurring. He observed several individuals
carrying large bales of what he believed to be marihuana. Humphry admittedly could not see the
substance in the bales because they were wrapped in brown paper and covered with white plastic,
but he had often seen marihuana packaged in this manner during his ten years in the narcotics
division. Humphry saw individuals removing the bales of marihuana from a green van and carrying
them into the house through the side door.


 He continuously relayed what he saw to other police
officers who were in the area. A woman, later identified as Appellant, was among those seen
unloading the bales of marihuana. About twenty minutes later, Humphry saw the same individuals
carrying what appeared to be bales of marihuana wrapped in black plastic out of the house and into
the van. Humphry believed the bales carried into the house earlier had been repackaged in black
plastic. Humphry stopped videotaping and went to assist the other detectives and police officers
from his unit who had approached the house for the purpose of conducting a knock-and-talk. 
            Kyle Summers, a sergeant in the narcotics division, was one of the officers who approached
the house. The house was surrounded by a chain-link fence but the officers entered a front gate to
the driveway which was “wide open.” Detectives approached the front door of the house while
Summers and DEA Agent Jason Hoff


 walked further down the driveway to the side yard where
Humphry had seen people unloading marihuana. The green van could be seen from the front gate
and the driveway. As he proceeded down the driveway toward the side yard, Summers could see
bundles of marihuana in the van in plain view. He watched a male carry a bundle and place it into
the van. Based upon the strong odor and his own training and experience, Summers believed the
bundle was marihuana. He also saw three females by the side door and a small child who was
pushing a bundle of marihuana. Summers, who was dressed in plain clothes, attempted to show his
police identification to the individuals but one of them, later identified as Maria Alfaro, walked into
the house. Summers could see two men inside of the house who had been about to exit but they
turned and walked further inside of the house when they spotted Summers. Worried that the
individuals who had retreated into the house were retrieving weapons or destroying evidence,
Summers identified himself as a police officer and walked into the back of the residence. He also
called for other officers to assist him which they did by securing the two men who had stopped in
an open living area. Summers walked down a hallway in an effort to find Alfaro and found a puppy
sitting in front of a closet door and wagging its tail. Summers called out “police” and told Alfaro
to open the door and come out. Alfaro complied and he had her walk to the kitchen where detectives
were talking to the other individuals. 
            Detective Frank Gutierrez is also assigned to EPPD’s narcotics division. Gutierrez
approached the residence and knocked on the front door while other officers went to the rear and
sides of the house. Gutierrez explained that during a knock-and-talk, two detectives would usually
make contact at the front door while other officers covered the sides and rear of the house to watch
for fleeing suspects, dogs, or potential threats to the officers’ safety. Given that the officers knew
there were five or more people at the house, their concerns about safety were elevated. Gutierrez’s
approach at the front occurred simultaneously with Summer’s approach to the side door. Waiting
by the front door, Gutierrez could hear a “lot of activity” inside of the house and then Sergeant Pena
opened the door from inside. Gutierrez entered and approached a group of eight people in the
kitchen. He identified himself as a policy officer and asked who lived in the house. Appellant and
two other women stated they lived in the house. Gutierrez advised the women of their rights and
asked them for consent to search the house for drugs. Each of them, including Appellant, consented
to a search of the house. Officers seized more than 1,000 pounds of marihuana as a result of the
search. 
            Appellant testified at the suppression hearing that there was a fence surrounding her property,
but she admitted that the gate to the driveway was open on the day of the search and she had not
posted any “no trespassing” signs on the property. At the conclusion of the hearing, defense counsel
argued that the police officers entered onto the curtilage of the property without a warrant and the
consent to search was not obtained until after the officers had illegally entered onto the property. 
The trial court denied the motion to suppress. Appellant waived her right to a jury trial and entered
a negotiated guilty plea. The trial court followed the plea bargain and assessed Appellant’s
punishment at imprisonment for a term of two years. 
LEGALITY OF THE SEARCH
            Appellant challenges the search and seizure by two related issues. In Issue One, she contends
that her motion to suppress should have been granted because the officers breached the curtilage of
the property by their initial entry. In Issue Two, Appellant maintains that the officers’ warrantless
entry through the side door violated the Fourth Amendment and rendered her subsequent consent to
search invalid.
Standard of Review
            We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard
of review. Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); Guzman v. State, 955
S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost total deference to a trial court’s rulings on
questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn
on credibility and demeanor. Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607
(Tex.Crim.App. 2005).
            When the trial court has not made a finding on a relevant fact, we view the evidence in the
light most favorable to the trial court’s ruling and assume the trial court made implicit findings of
fact supported by the record. Herrera v. State, 241 S.W.3d 520, 527 (Tex.Crim.App. 2007). We
will uphold the trial court’s ruling if it is reasonably supported by the record and is correct under any
theory of law applicable to the case. State v. Dixon, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).
Officers Initial Entry onto the Property
            Appellant’s first issue challenges the officers initial entry onto the property through the gate. 
She argues that because the yard was enclosed with a fence, the officers could not enter through the
open gate without a warrant.
            The Fourth Amendment protects a person against unreasonable searches and seizures
provided that the individual has a reasonable expectation of privacy in the thing searched.


 Oliver
v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740-41, 80 L.Ed.2d 214, 223 (1984). The
Fourth Amendment does not protect the merely subjective expectation of privacy, but only those
expectations that society is prepared to recognize as reasonable. Oliver, 466 U.S. at 177, 104 S.Ct.
at 1741. Thus, the litmus for determining the existence of a legitimate expectation of privacy as to
a particular accused is twofold: first, did he exhibit by his conduct an actual subjective expectation
of privacy; and second, if he did, was that subjective expectation one that society is prepared to
recognize as reasonable? Chapa v. State, 729 S.W.2d 723, 727 (Tex.Crim.App.1987), citing Smith
v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1987). A defendant seeking
to suppress evidence under the Fourth Amendment must show that he had a reasonable expectation
of privacy that the government invaded. Luna v. State, 268 S.W.3d 594, 603 (Tex.Crim.App. 2008).
            The Fourth Amendment’s protection includes a home. Oliver, 466 U.S. at 180, 104 S.Ct. at
1742; Porteous v. State, 259 S.W.3d 741, 745-46 (Tex.App.--Houston [1st Dist.] 2007), pet.
dismissed as improvidently granted, 253 S.W.3d 288 (Tex.Crim.App. 2008)(per curiam);
Washington v. State, 152 S.W.3d 209, 214 (Tex.App.--Amarillo 2004, no pet.). The curtilage, which
is the land immediately surrounding and associated with the home, warrants the same Fourth
Amendment protections that attach to the house. Oliver, 466 U.S. at 182 n.12, 104 S.Ct. at 1743
n.12; Bower v. State, 769 S.W.2d 887, 896 (Tex.Crim.App. 1989), overruled on other grounds,
Heitman, 815 S.W.2d at 685. 
            The protection afforded the curtilage is not unlimited. Washington, 152 S.W.3d at 214. 
Absent express orders from a person in possession of property not to trespass, a law enforcement
officer, like any other member of the public, has the right to enter on residential property and knock
on the front door for the purpose of contacting the occupants. Cornealius v. State, 900 S.W.2d 731,
733-34 (Tex.Crim.App. 1995); Bower, 769 S.W.2d at 897; Duhig v. State, 171 S.W.3d 631, 635
(Tex.App.--Houston [14th Dist.] 2005, pet. ref’d); Washington, 152 S.W.3d at 214. Because entry
is impliedly authorized, there is no reasonable expectation of privacy with regard to things observed
by those on the pathway to the front door. Bower, 769 S.W.2d at 897; Washington, 152 S.W.3d at
214. While a law enforcement officer can enter upon the curtilage of a house in an effort to contact
its occupants, the authorization may not exist if the occupant has manifested his intent to restrict
access to the area. Washington, 152 S.W.3d at 215, citing Bower, 769 S.W.2d at 897; Nored v. State,
875 S.W.2d 392, 397 (Tex.App.--Dallas 1994, pet. ref’d). Two examples of restricting access are
locking a gate or posting signs advising that the entry is not welcome. Washington, 152 S.W.3d at
215.
            It is undisputed that the officers entered the property through the open gate. Appellant did
not have any signs posted on the property which would indicate any intention to prohibit access to
the property. Under these circumstances, the officers’ initial entry onto the property was permissible
because any member of the public could have accessed the property in this same fashion. We
overrule Issue One.
Warrantless Entry of the Side Yard and House
            In her second issue, Appellant maintains that even if the initial entry through the gate was
permissible, the officers violated the Fourth Amendment by proceeding down the driveway to the
side door and by entering the house without a warrant. We will first address whether the officers
violated the Fourth Amendment by going into the side yard. 
            Citing State v. Peyrani, 93 S.W.3d 384 (Tex.App.--Houston [14th Dist.] 2002, pet. ref’d),
Appellant contends that the officers could approach the side door only after making an unsuccessful
attempt to contact the occupants at the front door. In Peyrani, the police received a tip that large
quantities of marijuana were being stored at and transported from a house in Harris County. The
police began conducting surveillance but they could not see any activity in the backyard because it
was surrounded by a wooden privacy fence. At one point, the police observed a car arrive at the
house. Two men exited the car and carried a heavy-looking bag to the backyard. They later returned
with two brick-like packages which appeared to be marihuana. After the men left the house, police
stopped their car at a nearby restaurant and found more than eleven pounds of marihuana. The police
did not attempt to obtain a search warrant but instead attempted to gain consent to search the house. 
Two officers walked through the open front gate at the driveway and down the front walkway. As
they approached the front door, they saw a man walking beside the house from the backyard. The
officers stepped off the front walkway, onto the grass, and approached the man. After determining
the man was not the homeowner, the officers proceeded to the backyard because they could hear
voices and they knew from their earlier surveillance that people were in the backyard. When they
rounded the back corner of the house, they saw the defendant and several other men loading bundles
of marihuana into a vehicle. Both officers testified that they walked into the backyard only to obtain
consent to search and did not expect to find marihuana, despite their observations throughout the
day. The trial court granted the defendant’s motion to suppress and the State appealed. The
Fourteenth Court of Appeals affirmed, holding that the officers’ entry into the backyard violated the
Fourth Amendment because they deviated from the path to the front door. Peyrani, 93 S.W.3d at
387. The instant case is distinguishable for two reasons: first, because the green van could be seen
from the open gate and the side yard was partially visible from the path to the front door, and second,
some officers went to the front door while the officers in question proceeded simultaneously to the
side door. Thus, Peyrani is inapplicable.
            Citing Atkins v. State, 882 S.W.2d 910 (Tex.App.--Houston [1st Dist.] 1994, pet. ref’d), the
State counters that the Fourth Amendment is not violated where officers simultaneously approach
the front and side or rear doors of a residence in an effort to make contact with the occupants. In
Atkins, police officers went to a residence to investigate after receiving an anonymous tip that
cocaine and heroin were being sold from the residence. One officer went to the front door where
people were seated outside and a second officer walked around the side of the house toward the back
door. When the second officer turned the corner he saw the defendant exit the back door. Upon
seeing the officer, the defendant dropped two baggies of heroin and re-entered the house. The officer
seized the heroin, followed the defendant inside, and arrested him for possession of heroin. The
defendant urged on appeal that because the second officer violated the curtilage by being in the back
yard without a warrant, the subsequent seizure of the heroin was unlawful. The court of appeals held
that the evidence supported an inference that the second officer was making a joint initial attempt
to contact the inhabitants of the house as sanctioned in Long. Atkins, 882 S.W.2d at 913. 
            Here, the green van in which the marihuana was being loaded could be seen by the officers
and any member of the public from the open driveway gate and the front of the house. Through
surveillance, the police had just observed people carrying bundles believed to be marihuana from
the green van into the house. Summers and Hoff approached the green van and side yard by going
from the open gate down the driveway which ran parallel to the front of the house. The driveway
was the obvious path to the side yard. We conclude that the officers did not violate the Fourth
Amendment by approaching the side yard and door as the evidence supports a reasonable inference
that they were making a joint initial attempt to contact the occupants of the house who had just been
seen in that area. See Atkins, 882 S.W.2d at 913. Furthermore, the officers did not go to the side
yard and door for the purpose of conducting a search but to provide security for the officers engaging
in the knock-and-talk at the front door and to ensure that none of the occupants fled out of the side
door. See Valdez v. State, No. 08-02-00215-CR, 2003 WL 361294, *4 (Tex.App.--El Paso February
20, 2003, no pet.)(where police officers went to a residence to investigate a loud noise complaint and
saw through the uncovered windows that several minors were drinking, one officer went to front
door and other officer went to side door to cover the exit; when one individual opened side door to
flee, the second officer observed the defendant in the kitchen concealing a plastic bag of cocaine in
a kitchen cabinet; held that initial intrusion of curtilage was lawful because the second officer was
not conducting a search but was covering the exit). 
            We turn now to address whether Summers’ warrantless entry into the house violated the
Fourth Amendment. The State argues that Summers had probable cause to suspect criminal activity
and had exigent circumstances to justify his warrantless entry into the house.
            Exigent circumstances is one of the recognized exceptions to the Fourth Amendment’s
warrant requirement. McGee v. State, 105 S.W.3d 609, 615 (Tex.Crim.App. 2003), citing Minnesota
v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under the exigent
circumstances doctrine, the State may justify a warrantless search or entry of a specific location if
it makes a two-step showing. First, the State must show that probable cause existed to enter or
search the specific location at the time the search was made. Gutierrez v. State, 221 S.W.3d 680,
685 (Tex.Crim.App. 2007). In the context of warrantless searches, probable cause exists when
reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene
would lead a man of reasonable prudence to believe that the instrumentality or evidence of a crime
will be found. Id. at 685; Estrada v. State, 154 S.W.3d 604, 609 (Tex.Crim.App. 2005). Second,
the State must show the existence of exigent circumstances which required an immediate entry into
a particular place without a warrant. Id. at 685. The Court of Criminal Appeals has identified three
categories of exigent circumstances that justify a warrantless intrusion by law enforcement officers: 
(1) providing aid or assistance to persons whom law enforcement reasonably believes are in need
of assistance; (2) protecting police officers from persons whom they reasonably believe to be present,
armed, and dangerous; and (3) preventing the destruction of evidence or contraband. Id. If the State
does not adequately establish both probable cause and exigent circumstances, a warrantless entry will
not withstand judicial scrutiny. Id. at 685-86.
            We will first examine whether probable cause existed to believe that evidence of a crime
would be found in the residence. The officer conducting surveillance, Detective Humphry, observed
several individuals--including Appellant--carrying bundles of what Humphry believed to marihuana
from the green van into the house. A short while later, Humphry observed bundles being loaded
back into the van. Humphry believed the marihuana bundles had been repackaged. As Summers
approached the side yard, he could see bundles of marihuana in the van in plain view and he could
smell a strong odor of marihuana coming from the van. He also saw a man loading a bundle of
marihuana into the van and a child by the door pushing a bundle. Based on his training and
experience, Summers believed the substance in the bundles to be marihuana. Based on the totality
of the circumstances Summers had probable cause to believe that a criminal offense was being
committed and evidence or contraband, specifically marihuana, would be found inside of the house.
            The only remaining issue is whether exigent circumstances justified the warrantless intrusion
by the officers. The State asserts that a warrantless entry was justified to prevent the destruction of
evidence and to protect the police officers from individuals believed to be armed and dangerous.
With regard to the possible destruction of evidence as an exigent circumstance, the State must show
that the police could have reasonably concluded that evidence would be destroyed or removed before
they could obtain a search warrant. McNairy v. State, 835 S.W.2d 101, 107 (Tex.Crim.App. 1991).
Relevant factors include: (1) the degree of urgency involved and the amount of time necessary to
obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility
of danger to police officers guarding the site of the contraband while a search warrant is sought; (4)
information indicating the possessors of the contraband are aware that the police are on their trail;
and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of
narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. Id.,
citing United States v. Rubin, 474 F.2d 262, 268 (3rd Cir. 1973).
            The officers observed marihuana being loaded into the van thereby permitting an inference
that the marihuana was in the process of being removed from the house. Given that Summers
approached the people at the side door where marihuana was being loaded into the van and identified
himself, the occupants were aware that the police had knowledge of the marihuana. After Summers
identified himself, one of the women standing at the side door went inside of the residence and two
men who had been about to exit turned and walked back further into the house. Summers
specifically testified that he followed the individuals who went into the residence because he was
concerned that they might try to destroy evidence. This was a reasonable conclusion under the
circumstances. See Estrada, 154 S.W.3d at 610 (evidence supported conclusion that warrantless
entry was justified to prevent destruction of evidence where two minors told officer that they drank
alcoholic beverages and smoked marijuana at defendant’s residence, defendant smelled of marijuana,
officer heard people inside defendant’s residence but no one answered door when he knocked, and
when officer returned later to investigate he observed people attempting to leave the residence).
            This same evidence, combined with the officers’ knowledge that there were more than five
people present at the residence, also supports a conclusion that the Summers’ warrantless entry was
justified because of a concern that the individuals who retreated into the house could be securing a
weapon and would pose a threat to the other officers on the scene. See Estrada, 154 S.W.3d at 610
(exigent circumstances existed where officer had received information from the defendant’s friends
that there were a number of people inside the house, and he wanted to be able to see and identify
them for his safety as he investigated the situation). Because the State established the exigent
circumstances exception to the warrant requirement, the officers’ warrantless entry into the house
did not violate the Fourth Amendment. We overrule Issue Two and affirm the judgment of the trial
court.


October 20, 2010                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)